## Court of Appeals.

(June 13, 1905.)

## PEOPLE v. CHARLES H. GAFFEY.

(182 N. Y. 257.)

FORGERY—EVIDENCE OF MOTIVE.

> Where it appears upon the trial of an indictment for forgery that the defendant was in the employ of a grocer at a salary of from ten to twelve dollars per week, out of which he supported a wife and family, and that the note alleged to have been forged was one of a series which was discounted at the bank and the proceeds placed by him to the credit of his employer, savings bank passbooks showing that he had deposited for at least two years, almost daily, various sums of money, are properly admitted in evidence as tending to show that his motive for the commission of the crime and placing spurious notes to the credit of his employer was to cover or supply a deficiency in the cash receipts of the grocery business due to his own act; the rule that one crime cannot be proved to establish another has no application to such a case.
>
> People v. Gaffey, 98 App. Div. 461, s. c. 18 N. Y. Crim. 546, reversed.

APPEAL from a judgment entered November 23, 1904, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, which reversed a judgment of the Onondaga County Court rendered upon a verdict convicting the defendant of the crime of forgery in the second degree, and an order denying a motion for a new trial and granted a new trial.

The facts, so far as material, are stated in the opinion.

William L. Barnum, for appellant.

The passbooks of the Syracuse Savings Bank and the Onondaga County Savings Bank and the statement from the books of the Trust and Deposit Company of Onondaga, purporting to

show the deposits and withdrawals made by the defendant with these banking institutions, were properly received in evidence. (People v. Everhardt, 104 N. Y. 591; People v. Molineux, 168 id. 297; Comm. v. Russell, 156 Mass. 196; Pierson v. People, 79 N. Y. 435; People v. Stout, 4 Park. Cr. Rep. 128.)

Theodore E. Hancock, for respondent.

The court erred in receiving in evidence the passbooks of the Syracuse Savings Bank, the Onondaga County Savings Bank and the Trust and Deposit Company of Onondaga, purporting to show the deposits and withdrawals made by the defendant with these various banking institutions. (People v. Utton, 4 N. Y. Crim. Rep. 455; People v. O'Donnell, 46 Hun, 358; People v. Harmon, 49 id. 558; 112 N. Y. 667; People v. Gaffey, 98 App. Div. 461; Comm. v. Jackson, 132 Mass. 16; Coleman v. People, 55 N. Y. 90; People v. Molineux, 168 id. 264; People v. Sharp, 107 id. 427; Worrall v. Parmalee, 1 id. 519; Anderson v. R., W. & O. R. R. Co., 54 id. 334.)

O'BRIEN, J.:  The defendant was indicted for forgery in the second degree and convicted by the jury, but the Appellate Division has reversed the judgment upon an exception taken at the trial and has granted a new trial.

The order of reversal states that it was made upon questions of law only, the facts having been examined and no error found therein.

If the limitations upon appeals to this court prescribed by the Constitution and the Code apply to criminal cases, then this court has no jurisdiction to review this case. It has no power either to affirm or reverse the judgment, but should dismiss the appeal.

This court has no power to review an appeal from an order granting a new trial on exceptions unless the appeal is accom-

panied by a stipulation for judgment absolute in case of affirmance even though the Appellate Division has allowed the appeal and certified a question of law for review. That court has no power to dispense with the stipulation by allowing the appeal and certifying questions of law for review. (Mundt v. Glokner, 160 N. Y. 571; Albring v. N. Y. C. & H. R. R. R. Co., 166 id. 287.)

There is no stipulation for judgment absolute in this case and of course such a stipulation would be a legal absurdity. The provisions in the order of the court below that it has reversed upon the law and approved the facts does not help the difficulty since there is still wanting the constitutional requisite of a stipulation for judgment absolute, always providing that the constitutional limitations upon appeals to this court have any application to criminal cases. Nor does the fact that just such an appeal as this is provided for by the Code of Criminal Procedure solve the question since no statute can give this court jurisdiction of a case when the Constitution forbids it.

The Constitution does forbid appeals to this court except in the three classes of cases enumerated in the section since it provides that the appeals must be limited to these three classes and these *only*. There can be no other appeals as matter of right and it provides for appeals from orders granting new trials *only* when there is a stipulation for judgment absolute. But I think it is very plain that the limitations upon appeals to this court found in the Constitution and the Code have no reference whatever to criminal cases. They apply to civil cases alone as the language plainly shows. Judgments in actions, final orders in special proceedings and orders granting new trials on exceptions where the appellant stipulates that judgment absolute shall be rendered against him in case of affirmance, are not terms that can be applied to criminal cases. No one would ever suppose that they could be applied to a case like this but for the somewhat awkward use of the phrase

" except where the judgment is of death," and a superficial reading would lead one to suppose that some change was effected thereby, but the words were used in order to keep the criminal law just where it was before.

The jurisdiction of the Court of Appeals shall be limited to the review of questions of law, except where the judgment is of death. This enables us to review the facts in capital cases as we always did. Appeals may be taken as of right only from the Appellate Division, except where the judgment is of death. This enables us to hear appeals in capital cases direct from the trial court as we did before, and hence the phrase was used out of abundant caution to keep appeals in criminal cases just where they were before. But I should suppose that the decisions of this court once made would be quite sufficient to settle the question, and we have decided unanimously that the limitations upon appeals to this court prescribed by the Constitution have no application to criminal cases. (People v. Miller, 169 N. Y. 339, 16 N. Y. Crim. 281; People v. Drayton, 168 id. 10, 16 N. Y. Crim. 1; People v. Willis, 158 id. 392, 14 N. Y. Crim. 72; People v. Klipfel, 160 id. 371, 14 N. Y. Crim. 169; People v. Kane, 161 id. 380, 14 N. Y. Crim. 295.)

I will, therefore, close the discussion of the question by repeating what was said on the point in the cases cited.

Concerning the merits of the case we have nothing to do with the facts. The learned court below by its order has certified that no error was found in that respect, or, in other words, the evidence in support of the charge was sufficient for the jury and warranted the verdict of guilty.

The only question is whether the exceptions were sufficient to entitle the defendant to a reversal of the judgment, and they were taken to a ruling of the court admitting in evidence three passbooks or accounts between the defendant and three different savings banks. These books showed that the defendant had deposited in each of these banks for at least two years

almost daily various sums of money varying in amount from about five dollars to twenty-five dollars. The deposits so made amounted in the aggregate to a large sum of money. It may be asked what all that had to do with the charge of forgery. We think it had a very obvious bearing on the case, especially on the question of *scienter*. (People v. Weaver, 177 N. Y. 434, 18 N. Y. Crim. 171.) The defendant was in the employ of a retail grocer, and was the general financial man of the concern, had charge of the books, made collections from customers and deposits at the bank and had full charge of the finances of the business, including the bank account of the concern.

His whole time was necessarily devoted to the business and his compensation never exceeded ten or twelve dollars per week. With these earnings he had a wife and family to support. The note in question was one of a series of notes of like character amounting in the aggregate to a large sum. The amount is stated in the opinion below at $1,700, but the precise amount whatever it was is not material. The defendant procured all these notes to be discounted at the bank and placed to the credit of his employer so that on the surface of the transaction it would appear that the defendant had no personal benefit from any of these forgeries, but that all was done for the interest or benefit of his employer. Of course, every one knows that clerks and financial agents do not commit forgery for any such purpose. There is always some motive of their own behind the transaction. The defendant would be guilty of the charge even though he forged the note for the benefit of his master, but the difficulty would be in persuading a jury to believe it since all men will in such cases look for a motive on the part of the accused to engage in such a series of crimes.

Hence, it was open to the public prosecutor to prove such a motive if he could. What he claimed was that the deposits in the savings banks represented money that the defendant abstracted from the cash drawer of the grocery concern and

the spurious notes were made and discounted at the bank in order to keep up the credit of the concern and cover the loss of cash which was, as claimed, almost a daily occurrence for months and years. Proof of this character would tend to explain the conduct of the defendant in depositing a series of spurious notes to the credit of his employer and tend to show the real motive and reason for the defendant's conduct which, without such proof, might cause the jury to hesitate before finding that he had forged notes without any purpose or motive of benefit to himself. The fact that the defendant had a private account, not only in one savings bank but in three, and made such frequent deposits in all of them, was a remarkable circumstance when we consider that his earnings were at most but $12 per week and that he had a family to support. The question naturally suggests itself where did he get the money to make these deposits?

The defendant went on the stand and attempted to give some explanation of the circumstances, but he did not throw much light on them. He testified that about fifteen years before he received $3,500 as the result of the purchase by him of a lottery ticket; that about the same time he won a couple of thousand dollars by betting on election. He owned the house where he lived and a couple of vacant lots and held a note against his employer of $2,100. All his property did not exceed $7,000, and the note was the only part of it that could produce any income and that was very small. The constant deposits of money in the savings banks were not explained or accounted for. The question was not whether the proof given was sufficient to convict him for larceny by embezzlement, but whether the facts were not such as to permit the jury to draw an inference as to motive in procuring the spurious notes to be credited to his employer. The rule that one crime cannot be proved to establish another has no application. It was always the law that when one offense not charged furnished

a motive for the one charged all the facts could be shown. The rule applies only when proof of another crime can have no purpose, except to show that the accused is a criminal who having committed one offense would be likely to commit another, and, therefore, was guilty of the one charged. The two offenses must be so connected that the commission of one would naturally furnish a motive for the commission of the other.

We think, therefore, that the evidence which the bank pass-books contained was competent on the question of motive. It tended to explain what otherwise would remain obscure since it furnished the key to the defendant's conduct in apparently commiting forgeries that could not benefit himself. The case of New York & B. Ferry Company v. Moore (decided in this court in 1886 and reported in 1 Silvernail N. Y. Repts., p. 52) contains a very full discussion of the law on that question, and it seems to me that it is there shown that evidence of the character to which the exception in this case was taken is competent upon the trial of such a charge as was alleged in the indictment.

The case of State v. Henderson (29 W. Va. 164) is in point as deciding the principle upon which such evidence is admissible. The court had under review a judgment of conviction of a party for forging a receipt acknowledging the payment by the accused of a large sum of money to the person whose name appeared to have been signed to the receipt .

The question was whether on such a charge the trial court committed an error in admitting proof of the defendant's pecuniary circumstances at or about the time of the execution of the receipt alleged to have been forged, and it was held that the evidence was competent. The court said: In Chahoon v. Comm. (20 Gratt. 733), and in Sands v. Comm. (id. 800) it was held on the trial for the forgery of a bond of one who was then dead, that it was competent to prove that he whose name was

alleged to have been forged to the bond was prompt in the payment of his debts, and that he owned a large property, real and personal, and was doing a good business. For the same reason it was competent in this case before us to prove that he in whose favor the alleged forged receipt was drawn showing the payment by him of a large sum of money, was at the date thereof in such embarrassed circumstances that it is impossible he could have paid so large a sum. The evidence was competent and was properly allowed to go to the jury to be by them weighed for what it was worth with the other evidence in the case." In the case at bar the bank passbooks tended to prove that the defendant's motive for placing spurious notes to the credit of his employer at the bank was to cover or supply a deficiency in the cash receipts of the grocery business due to his own act.

The judgment and order of the Appellate Division should be reversed and the judgment of the trial court affirmed.

CULLEN, Ch. J., HAIGHT, VANN and WERNER, JJ., concur so far only as Judge O'BRIEN's opinion deals with the merits;* BARTLETT, J., dissents generally; GRAY, J., absent.

Judgment and order reversed, etc.

---

*NOTE—In declining to concur with what O'BRIEN, J. said about the effect of a unanimous affirmance, the majority of the court, in effect, again declares that a unanimous affirmance by the Appellate Division precludes the Court of Appeals from looking into the record to see if there was any evidence to support the findings of fact. (See note on "Effect of Unanimous Affirmance," 18 N. Y. Crim. R. 437, and Helmer and DeGarmo cases therein cited.)