THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GARHIS OHANIAN, Appellant.

Crimes — larceny — trial — evidence — credibility of defendant exclusively for jury — court may not say as matter of law that testimony is false — comments of judge during trial and in charge, in effect deciding sole question of fact in case, . reversible error.

1. No court or judge may say, as matter of law, that evidence of a defendant, on trial for larceny of jewelry intrusted to him for delivery, that he did not remember what he had done with it and that he had suffered from a severe headache and was depressed and absent minded on the day of its disappearance, is false. His credibility is exclusively for the jury and they have the right to take into consideration the fact that defendant had frequently been intrusted with valuable jewelry and that the request that he deliver it might have impressed him no more than other casual incidents of daily routine and find that in his inefficiency, caused by depression, he really did forget.

2. Repeated comments, therefore, by the trial judge, both during the trial and in his charge, assuming the falsity of the defense, from

which the conclusion is inescapable that the judge made himself the trier of the facts and acted as a self-appointed substitute for the jury, constitute error of law, and where there was only the one question in the case and in language undisguised the judge decided that question, the error is substantial, not technical, and this court may not disregard it.

*People* v. *Ohanian*, 219 App. Div. 709, reversed.

(Argued May 5, 1927; decided May 31, 1927.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 21, 1927, which affirmed a judgment of the Court of General Sessions of the county of New York, rendered upon a verdict convicting the defendant of the crime of grand larceny in the first degree.

*Vahan H. Kalenderian* for appellant. Exceptions appearing in the record to the charge, to refusal to charge, to the remarks of the trial judge during the trial and other rulings constitute reversible error. (*People* v. *Marendi*, 213 N. Y. 600; *People* v. *Frasco*, 187 App. Div. 299; *People* v. *Wansker*, 108 Misc. Rep. 84; *People* v. *Wolff*, 183 N. Y. 464; *People* v. *Mull*, 167 N. Y. 247; *People* v. *Naimark*, 154 App. Div. 762; *People* v. *Acardo*, 140 App. Div. 929; *People* v. *Milch*, 178 App. Div. 875; *People* v. *Esposito*, 224 N. Y. 370; *People* v. *Kinney*, 202 N. Y. 289; *People* v. *Mayer*, 132 App. Div. 646; *People* v. *Becker*, 210 N. Y. 274.)

*Joab H. Banton, District Attorney* (*Archibald Firestone* of counsel), for respondent. If any errors occurred during the course of the trial or during the judge's charge, by reason of any remarks made by the trial judge or by his refusal to charge as requested, they were immaterial under section 542 of the Code of Criminal Procedure; and, furthermore, were cured by directions of the court made subsequent to the main charge. (*People v. Sprague,*

217 N. Y. 373; *People* v. *Sobieskoda*, 235 N. Y. 411; *People* v. *Curtis*, 225 N. Y. 519; *People* v. *Bransby*, 32 N. Y. 525; *People* v. *Swersky*, 216 N. Y. 471; *People* v. *Watson*, 216 N. Y. 565; *People* v. *Fielding*, 158 N. Y. 543; *People* v. *Manganaro*, 218 N. Y. 9; *People* v. *Maestry*, 167 App. Div. 266.)

O'BRIEN, J. The indictment charges the larceny of two bracelets valued at $1,700, the property of Friedensohn & Sakolncik. From his conviction as affirmed defendant appeals to this court on errors of law raised by exceptions.

Friedensohn & Sakolncik were jewelers occupying a room on the eleventh floor of No. 71 Nassau street, New York city. Immediately next to their room was a suite of three rooms one of which was occupied by Gilfond & Taylor, jewelers, and another by Harry Janowitz, a jewelry engraver. Defendant was employed by Gilfond & Taylor as a repairer. The entrances to Friedensohn & Sakolncik's room and to the suite occupied by Gilfond & Taylor and by Janowitz were separated by a distance of six or eight feet. About eleven-thirty o'clock on the morning of June 16, 1925, Friedensohn delivered the bracelets to Janowitz for engraving. He engraved them as directed and about one o'clock in the afternoon of the same day put them and his bill in an envelope, handed them to defendant and asked him to take them next door to Friedensohn's shop. Defendant took the package, left Janowitz's room and in a minute or two returned. Nothing was said about the bracelets. About twenty minutes later defendant was sent on another errand, this time outside the building, and shortly returned after performing it. At two o'clock Sakolncik went to Janowitz to inquire where the bracelets were. In the presence of Sakolncik, Swirsky and Horowitz, defendant was questioned by Janowitz. What had he done with the bracelets? Hadn't he delivered them? He searched his

pockets, lifted his hands to his head, tore his hair and exclaimed: " I don't remember what I did with them, O, my God what did I do? " At the trial he asserted that he did not remember what he had done with the bracelets or where he had put them, whether he had dropped them in the hall or left them on the desk. He denied that he had stolen them or that he had given them to some one in the hall. He claimed to have suffered from a severe headache the night before and to have been depressed and absent minded on the day of the disappearance of the bracelets. At the same time he recalled many incidents of the day and did not pretend to have been afflicted with any form of insanity.

No court or judge may say, as matter of law, that defendant's evidence is false. It may, perhaps, be true. His credibility was, of course, exclusively for the jury. An acquittal based upon the existence of a reasonable doubt could not, as matter of law, be deemed utterly unreasonable. The jury had the right to take into consideration the fact that defendant had frequently been intrusted with valuable jewelry, that Janowitz's request to deliver the envelope to the shop next door might have impressed defendant no more than many other casual incidents of daily routine and they could have found that in his inefficiency caused by depression he was inattentive to his work and really did forget. The jury ought to have been left free to ask itself and to answer the question whether this simple errand created any deeper impression upon defendant's memory than the mailing of a letter or any other petty incident of the day's work. Answers to these questions are included within the function of the jury and not of the court.

The judge's repeated comments and his charge assumed the falsity of the defense. The practical effect of them may be viewed as morally depriving the jury of its freedom of action and as coercing it into reaching such a verdict as perhaps it might not otherwise have rendered. The

respective duties of the court and the jury are clearly defined. Questions of fact are for the jury, and the court must, if requested, inform the jury that they are the exclusive judges of all questions of fact. (Code Crim. Proc., sections 419, 420.) While verbal compliance was had with these fundamentals, their essence was destroyed. The court took into his own control the disposition of defendant's credibility. At one stage of the trial he remarked: " I do not think the jury is going to be very sympathetic." On another occasion his comment on defendant's testimony was, " You cannot slip anything like that here," and " I can readily see the motive of that." Satirically he assured defendant's counsel: " I am going to ask the jury to believe his story * * *. You said yourself you do not know whether he was telling the truth to you; if you are in doubt about it, what are you going to say to the jury? " " If your contention is quite right, every merchant in this city would be required to have a mental examination made of an employee. In other words whether he was aphasic or whether he was something else, before he could be held for criminal responsibility, that he stole the contents of an entire shop. * * * I must say once more that is perhaps the most unique defense that I have ever heard interposed." In his charge he stated to the jury: " Subterfuge will not go in this court. Absurd excuses should not govern a jury. I must say that the defense interposed is extraordinary." " Can a man come into this court and hoodwink a jury, bamboozle twelve men and say that he does not remember what happened, because he had headaches and other ailments that have been described here? If you feel that you should say ' not guilty ' upon the testimony that has been introduced or ' not guilty ' arising out of a reasonable doubt, that is your privilege." After the close of the charge, the court in passing upon the numerous exceptions noted by defendant observed that the jury " can disregard pretty much everything I said,

if they see fit." He did go through the form of instructing them respecting the presumption of innocence and defendant's right to the benefit of a reasonable doubt arising from the evidence, yet he coupled these instructions with an exhortation not to have justice made ridiculous, held up to public ridicule. He warned against sympathy and advised that reasonable doubt must be cautiously. exercised.

The question whether defendant had a fair trial is primarily, at least, one for the trial court and secondarily, for the Appellate Division. If no error of law is presented by exception the judgment must be affirmed here. The mere intimation by the trial judge of an opinion on the merits of the case does not by itself constitute such an error of law as justifies reversal by this court. (*Hurlburt* v. *Hurlburt*, 128 N. Y. 420, 425, 426.) The trial judge is something more than a mere automaton. In the English courts and in our Federal courts, a wide latitude is allowed, yet that latitude is always restricted by the requirement that the jury must be advised in good faith that it and not the judge is the exclusive trier of the facts. (*Weare* v. *U.·S.*, 1 Fed. Rep. [2nd Series] 617; *Buchanan* v. *U. S.*, 15. Fed. Rep. [2nd Series] 496.) Under our Code of Criminal Procedure (Sections 419 and 420) this duty is specifically enjoined. While the trial judge in the case before us repeated the words of the Code in the literal manner commanded by the statute, plainly his attitude and language throughout the trial could not fail to neutralize their force. The rhetorical question asked by the court: " Can a man come into this court and hoodwink the jury and bamboozle the jury? " answers itself. So too does the judicial entreaty: " Don't have justice held up to public ridicule " operate as a plea to convict. The members of the jury could not have been notified in plainer words that if they allowed this defendant to escape they would be hoodwinked and bamboozled and would hold justice up to public ridicule. Did they so

believe or was an opinion forced upon them by the judge? If left to themselves to appraise defendant's credibility, how would they have weighed it? Whatever their opinion, dared they brook the satire and ridicule of the judge? We cannot escape the conclusion that the judge made himself the trier of the facts and acted as a self-appointed substitute for the jury. Such conduct is a violation of section 419 of the Code of Criminal Procedure and as such constitutes an error of law. There was only one question in this case and that was whether defendant's testimony concerning his forgetfulness was true or false. In language undisguised, the judge decided that question. An error which prevents proper consideration by the jury of the only question relied on by the defendant is substantial not technical and we have no right to disregard it. (*People* v. *Gerdvine,* 210 N. Y. 184, 187.) Indeed, errors committed by trial judges in allowing prosecuting officers to indulge in inflammatory appeals to the prejudice of juries are far less harmful than partisan argument of the judge himself yet they have incurred the condemnation of this court and have formed the basis for reversals. (*People* v. *Fielding,* 158 N. Y. 542; *People* v. *Mull,* 167 N. Y. 247; *People* v. *Wolf,* 183 N. Y. 464.)

The judgment of the Appellate Division and that of the trial court should be reversed and a new trial ordered.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, LEHMAN and KELLOGG, JJ., concur.

Judgment reversed, etc.