UNITED STATES, Appellant

v.

JOHN J. ZIMMERMAN, Fireman, U. S. Navy, Appellee

2 USCMA 12, 6 CMR 12

No. 261

Decided October 6, 1952

CDR. Malcom J. Bradbury, USN, and CAPT. Francis C. Foley, Jr., USMCR, for Appellant.

CDR. Raymond van Wolkenten, USN, and LCDR. Frederic T. Suss, USNR, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

The accused was convicted by special court-martial[2]—on his plea of guilty—of unauthorized absence and missing a movement of his ship, respectively violations of the Uniform Code of Military Justice, Articles 86 and 87, 50 USC §§.680 and 681. He was sentenced to receive a bad-conduct discharge and to be confined at hard labor for three months. The findings and sentence were approved by the convening and supervisory authorities. A Navy board of review, however, disapproved the findings and sentence on the grounds that (1) The president did not charge the court concerning the elements of the offense, the presumption of innocence, reasonable doubt, and burden of proof. (2) The record did not show (a) that the accused was present in court at the trial; (b) that the reporter had been sworn; or (c) that the members of the court and the personnel of the prosecution and defense had been sworn. It directed that the charges be dismissed.

On November 30, 1951, the Acting Judge Advocate General, United States Navy, certified to this Court the correctness of this board of review decision. We held in United States v. Zimmerman (No. 261), 1 USCMA 160, 2 CMR 66, decided February 7, 1952, that the procedural errors assigned by the board had not operated to the substantial prejudice of the accused. This action was taken as to the first ground above on the basis of the plea of guilty and under the authority of United States v. Lucas (No. 7), 1 USCMA 19, 1 CMR 19, decided November 8, 1951. As to the second ground, we found the factual basis for the board's action not well taken. We did not close our consideration at that point, however, but went on to rule that the record disclosed error in an improper presentation of prior convictions to the court-martial, basing our decision on United

States v. Carter (No. 159), 1 USCMA 108, 2 CMR 14, decided Jan. 18, 1952. We announced, as in Carter, that this error operated to the substantial prejudice of the accused, and remanded the case to The Judge Advocate General, United States Navy, "for action not inconsistent with the views expressed herein." It was our thought at that time that The Judge Advocate General would refer the matter to the board of review which had considered the case, whose members would thereafter affirm so much of the sentence as deemed appropriate in the absence of the prior convictions improperly considered. See Uniform Code, supra, Article 66 (c), 50 USC § 653.

The case was referred to the board of review, which, on motion of appellate defense counsel, heard oral arguments. The board has now ruled, one member dissenting, that the principle forbidding double jeopardy precludes it from reinstating any part of the sentence, and that consequently its prior ruling of dismissal must stand. The Judge Advocate General has now certified three principal questions to us. We shall not set out each question at this point, but shall state each as we consider it.

II

*Did the original decision of the board of review in this case which disapproved and set aside the findings* ■ *and sentence and ordered the charges dismissed have the same effect as a finding of not guilty by the trial court or a setting aside of a conviction by a board of review on the grounds that the evidence was insufficient to sustain the findings?*

This question we answer in the negative. The key, in our view, lies in the lack of finality of board of review disapproval where its action is predicated on a matter of law. Article 67 (b) of the Uniform Code of Military Justice, 50 USC § 654, provides that:

[2] 4–51–Sp–283.

*"(b)* The Court of Military Appeals shall review the record in . . .

*(2) All* cases reviewed by a board of review which The Judge Advocate General orders forwarded to . . . [it] for review . . . ." [Emphasis supplied]

And Article 67 (d) of the Code, supra, commands that:

*"(d)* In any case reviewed by it, the Court of Military Appeals shall act only with respect to the findings and sentence as approved by the convening authority and as affirmed *or set aside as incorrect in law* by the board of review. . . . The Court of Military Appeals shall take action only with respect to matters of law." [Emphasis supplied]

Additionally, Article 67 (f) states that this Court may, after it has acted on a case, direct The Judge Advocate General to return the record to the board of review for further review *in accordance with its decision.*

These sections state clearly that The Judge Advocate General of a service may certify *any* case to this Court with no restrictions whatever as to whether the board of review decision was in favor of or contrary to the interests of an accused. Article 67 (d), supra, explicitly gives to this Court power to act with respect to findings and sentence which have been "set aside as incorrect in law" by a board of review. A board of review decision clearly based on matter of law, therefore, does not possess such finality that it may be assimilated to court-martial findings of not guilty. However, we expressly reserve consideration of the question of whether board of review disapproval for lack of sufficiency of the evidence as a matter of law possesses that finality.

### III

*Would action by the board of review in this case reinstating the conviction consistent with the decision* ▮▮▮▮▮ *and mandate of this Court and approving such part of the sentence as found correct, violate Article 44, Uniform Code of Military Justice, and the Fifth Amendment to*

*the United States Constitution, or either of them?*

These questions we also answer in the negative. Here, as we shall shortly see, no jeopardy had yet attached when the case was returned to the board of review after this Court's prior consideration. Consequently, there could be no violation of Article 44 of the Code, supra, 50 USC § 619. That Article provides that:

*"(a)* No person shall, without his consent, be tried a second time for the same offense.

*"(b)* No proceeding in which an accused has been found guilty by a court-martial upon any charge or specification shall be held to be a trial in the sense of this article until the finding of guilty has become final after review of the case has been *fully completed.*" [Emphasis supplied]

This language establishes for the military establishment a rule as to when jeopardy attaches—for the purpose of setting up a standard for use in applying the general rule to the effect that guaranties against double jeopardy become operative only after an accused person has once been placed in jeopardy. Collins v. Loisel, 262 US 426, 429, 67 L ed 1062, 1064, 43 S Ct 618. Where, as here, an accused is found guilty by court-martial, there has been no "trial," and hence no jeopardy, until the finding of guilty has been affirmed by the last appellate tribunal to consider it. It is of no consequence that a board of review may have directed a dismissal on a point of law. Its action is interlocutory only until the case has been presented to this Court, or the time within which this may be done has expired. As observed previously, Article 67 (d) expressly confers on this Court power to review findings and sentences "set aside as incorrect in law" by a board of review. Congress could not have intended in that situation to limit this Court to the rendition of an "advisory" opinion merely. In this connection it is important also to take into account the provisions of the Manual for Courts-Martial, United States, 1951, paragraph 100b (2). Language there expressly provides that, where a Judge Advocate

**15**

General forwards to this Court for consideration a board of review decision setting aside a finding of guilty and sentence, he shall "cause a copy of the decision of the board of review *and his order of reference* to be served upon the accused and upon the appellate defense counsel." (Emphasis supplied). This provision insures that the accused is not misled into thinking that *the* appellate review of his case has been completed.

Appellate review, under current military law, may, for want of a better term, be characterized as ▮▮▮▮▮ ▮ "unitary." Once a case reaches a board of review, it has certainly entered this "unitary" appellate sphere. Thereafter, appellate treatment is not completed until all possible steps within this sphere have been taken, or until the time within which they might be taken is exhausted. Not until all have been completed, and the conviction affirmed, has the accused been placed in jeopardy. If the review results in action setting aside the conviction for error of law this Court or a board of review may order a rehearing. The Uniform Code, supra, Articles 66(d) and 67(e). In the instant case a rehearing could have been ordered. Would it not, therefore, constitute an anomaly to rule that Article 44, supra, precludes the board of review from reinstating the correct portion of the sentence?

Instructive also is a comparative reference to the corresponding provisions of the Manual for Courts-Martial, U. S. Army, 1949. Paragraphs 96 and 97 of this legal source spell out perhaps even more clearly the interlocutory character of board of review action thereunder. Thus paragraph 96a provides that a record of trial involving a sentence of death, or a general officer, shall be "examined" by a board of review, and that thereafter the record and the board of review opinion will be forwarded to the Judicial Council "for further examination" and thence in turn to The Judge Advocate General and the Secretary of the Army, whose recommendations are submitted to the President for his confirming action. Paragraph 96b, with respect to several sorts of trials,

not necessary to enumerate here, provides that the record shall be "examined" by a board of review, and that its opinion and the record shall be forwarded to the Judicial Council "for confirming action *in conjunction with The Judge Advocate General.*" (Emphasis supplied). Paragraph 96c contains similar expressions. Finally, paragraph 97 provides that, "A holding of legal insufficiency by a Board of Review *becomes legally effective upon concurrence in the holding by The Judge Advocate General.*" (Emphasis supplied). These provisions speak for themselves. One of the most striking things about them is the one thing they do not say. Each refers to an *examination* by and an opinion of a board of review. Yet there is no reference to the *decision* of such body.

Although substantial and salutary changes in the powers of boards of review have been made by the Uniform Code and the Manual for Courts-Martial, United States, 1951, the fact remains that their essential status has been left unaltered. Thus, in spite of the fact that the Uniform Code, supra, Article 66(d), vests in them power to order rehearings or dismissals in appropriate cases, and although they are now empowered to render "decisions," Article 66(e) provides that:

"The Judge Advocate General shall, *unless there is to be further action by* . . . the Court of Military Appeals, instruct the convening authority to take action in accordance with the decision of the board of review. . . ." [Emphasis supplied]

And under Article 67(b)(2) and (d) as mentioned earlier herein, The Judge Advocate General is empowered under authority vested in him to forward cases for review by this Court. Thus he may determine for himself, within the terms of Article 66(e) whether "there is to be further action by . . . the Court of Military Appeals."

In some cases—and the present is an excellent example—the appellate stage of proceedings against an accused may be substantially protracted. Here the case has been twice before a board of review, will return for further consid-

eration, and will have been twice passed on by this Court. However, no matter how lengthy the process, and regardless of the number of times a case may pass between a board of review and this Court, the fact remains that the sum constitutes one appellate review of one case. Despite the fact that their docket numbers might conceivably differ—although the usage of this Court is to the contrary—the present and the earlier Zimmerman appearances here constitute one and the same case. Different problems have been involved, it is true, but *one* case has been the subject of *one* appellate review. Until all possible and proper aspects have been considered, *the* appellate review is incomplete and no jeopardy can possibly have attached. Thus, in the instant proceeding, the accused has not yet been put once in jeopardy. The board of review was and is now wholly free to reinstate that portion of the sentence originally adjudged against the accused which may properly be supported in the absence of the erroneously presented prior convictions. However, it must be recognized that a determination that reinstatement by the board of review of a portion of the sentence at this stage of the proceedings does no violence to the provisions of Article 44 of the Uniform Code, supra, does not dispose of the case. Certainly it does not dispose of the problem said to be posed by the Fifth Amendment to the Constitution of the United States.

The courts have been divided on the question whether that Amendment applies of its own force to personnel of the military establishment. Compare Sanford v. Robbins, 115 F2d 435 (CA 5th Cir), cert den 312 US 697, 85 L ed 1132, 61 S Ct 737, with In re Wrublewski, 71 F Supp 143 (DC SD Cal); Ex parte Benton, 63 F Supp 808 (DC ND Cal); United States ex rel Innes v. Crystal, 131 F2d 576 (CA2d Cir), cert den 319 US 755, 87 L ed 1708, 63 S Ct 1164. Some, including the Supreme Court of the United States, appear to have expressly avoided the question. Carter v. McClaughry, 183 US 365, 46 L ed 236, 22 S Ct 181; Wrublewski v. McInerney, 166 F2d 243, 244 (CA 9th Cir). We are not unmindful of the Supreme Court's recent decision in Wade v. Hunter, 336 US 684, 93 L ed 974, 69 S Ct 834, in which it appears, concededly, that it was that Court's tacit understanding that the Fifth Amendment *does* apply to military persons. However, because of the division of authority in the area, and because a resolution of the question was not necessary to the result reached there, we hesitate to accept that decision as the Supreme Court's definitive and final ruling on the issue. Neither do we think the issue need be resolved here—for, even if applicable, the Fifth Amendment would not require a result different from that reached under the provisions of the Uniform Code's Article 44.

The Fifth Amendment, and its counterparts in the constitutions of the several states, are derived from the common law maxim to the effect that *nemo debet bis vexari, si constet curiae quod sit, pro una et eadem causa*. The Amendment provides simply that no person shall ". . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ." Before considering its application to this case, we must isolate the present problem with some particularity. At the heart of the arguments here lies the certification to this Court by the Navy's Judge Advocate General of the original determination and dismissal by the board of review. Assuming arguendo that this certification by The Judge Advocate General amounts to an appeal by the prosecution—although this does violence to the idea of unitary appellate review in court-martial procedure—would such appeal violate the accused's guaranty against double jeopardy? We think not.

At the time of the adoption of the Constitution and its elder amendments, prosecution appeals in criminal cases were wholly unknown, and it was of no consequence that the trial court might have erred in questions of law as distinguished from matters of fact. 1 Bish. Crim L § 992. Blackstone observed that "there hath yet been no instance of granting a new trial where the prisoner

was acquitted upon the first." 4 Bl Comm 361. Early state cases, although concerned with the provisions of their own constitutions, evidence the feeling of the times. In People v. Webb, 38 Cal 467, the trial judge directed a verdict of not guilty, his determination turning on a question of law. The prosecution appealed pursuant to the provisions of a statute. The court ruled that the statute did not confer such right to appeal on the prosecution, observing that if it did it would contravene the California constitutional guaranty against double jeopardy. In People v. Royal, 2 Ill 557 (1839), the Illinois court was presented with an analogous problem. There the defendant had been convicted of assault and battery before a justice of the peace. He appealed to the circuit court, which reversed on the ground that the justice of the peace was without jurisdiction because the statute upon which the prosecution was based was unconstitutional. Thereupon the prosecution sued out a writ of error to the Supreme Court. That court, in a very brief opinion, despite the defendant's joinder in the writ, and of its own motion, ruled that a writ of error on behalf of the people would not lie. The rationale appears to have been that a retrial could not be ordered, for it would contravene the defendant's guaranty against double jeopardy. Additionally, the Illinois court expressly held in People v. Miner, 144 Ill 308, 33 NE 40, that a statute permitting appeals by the state in criminal cases after verdict of acquittal contravened its constitution. Denial of the right of the prosecution to appeal an acquittal of a criminal charge was also the result reached in State v. Solomons, 6 Yerger 360 (Tenn), 27 Am Dec 469. The Tennessee court came to this conclusion through construction of its statute governing appeals, but expressed doubt as to whether an express grant of the right to appeal by the prosecution in such case could be sustained in the face of provisions of its constitution.

In People v. Corning, 2 NY 9, 49 Am Dec 364, the following situation was presented to the New York Court of Appeals. The trial on a criminal charge had resulted in an acquittal of the defendant. The prosecution brought writ of error to an intermediate appellate court. That court denied a defense motion to dismiss, and proceeded to affirm the acquittal on the merits. A writ of error was then taken to the Court of Appeals. After an exhaustive review of the authorities, that Court concluded that the weight of authority, both here and in England, was against the right of the Government to a writ of error in a criminal case. It noted the absence of specific statutory authority to sustain the right of the prosecution in this particular, and concluded that in the absence of such authority the writ could not issue. A passing reference to double jeopardy was made, but the court gave no indication that this principle would bar the specific authority it found wanting. Other state court cases to the same effect are numerous. Among them are People v. Merrill, 14 NY 74; Commonwealth v. Cushing, 3 Cush 212 (Mass).

Turning now to the Federal scene, we need advert to one case only. In Kepner v. United States, 195 US 100, 49 L ed 114, 24 S Ct 797, the Supreme Court explicitly ruled that a prosecution appeal after acquittal of a criminal charge violates the Fifth Amendment. This result was reached not without dissent, however, for Mr. Justice Holmes—joined by Mr. Justice White and Mr. Justice McKenna—announced that to his mind a prosecution appeal on a question of law, if successful on appeal and followed by a second trial, would not result in placing the defendant twice in jeopardy. Here, he said, there would be only a continuation of the jeopardy which attached at the first trial.

The foregoing cases have been concerned either with the right of the prosecution to appeal a trial court acquittal or, perhaps, with the right of the prosecution to appeal generally. Many states have now enacted statutes permitting prosecution appeals directly from trial court judgments in certain cases. These are reviewed and analyzed in Miller, Appeals by the State in Criminal Cases, 36 Yale LJ 486. As examples we need cite only NY Code Cr Proc

§ 518, for the states, and 18 USC § 3731, for the Federal system.

We direct attention now to appeals by the prosecution from adverse decisions of intermediate appellate courts. In United States v. Sanges, 144 US 310, 36 L ed 445, 12 S Ct 609, it was held that the Government had not brought itself within the applicable statute governing writs of error to the Supreme Court in criminal cases. That writ would lie, it was said, only at the instance of an aggrieved defendant. Reviewing the authorities disapproving prosecution appeals in criminal cases, the Court concluded that express statutory authority must be required for such a "serious and farreaching . . . innovation in the criminal jurisprudence of the United States." 144 US at 323. The Court did not suggest that such an "innovation" would suffer infirmities under the Fifth Amendment.

The next important case in point is United States v. Dickinson, 213 US 92, 53 L ed 711, 29 S Ct 485. The question there was whether the United States could secure review by certiorari of a Court of Appeals reversal of a conviction on a point of law. The question turned on a construction of the terms of the Act of March 3, 1891, c 517, 26 Stat 826. The Court concluded that this Act did not grant the right of review by certiorari sought to be exercised. In the course of its opinion it reviewed the relevant statutory scene. At the time of the passage of the Act of 1891, the only means by which a Supreme Court decision could be secured on a question of law arising in a noncapital case was by certificate of division among the judges of the Circuit Court, under sections 651 and 697 of the Revised Statutes. Parenthetically it may be added that we gather, of course, that a defendant was entitled to a writ of error, as set out in the Sanges case. In capital cases, defendants were given the right to Supreme Court review by writ of error in the Act of February 6, 1889, 25 Stat 656, c 113 § 6. The Act of 1891, involved in the Dickinson case, superseded existing statutory provisions as to certificates of division of opinion among judges. The Act of 1891 was itself superseded by the Act of March 3, 1911, c 231, 36 Stat 1087, 1157, known as section 240 of the Judicial Code, and forerunner of the present 28 USC § 1254(1).

In United States v. Gulf Refining Co., 268 US 542, 69 L ed 1082, 45 S Ct 597, the Supreme Court held that certiorari on behalf of the United States would lie to review a Court of Appeals reversal of a criminal conviction. Thus the transition from the statutes in force at the time of the Sanges case was complete. It is interesting to note that the Court of Appeals had held that the District Court had erred in denying the defense motion for a directed verdict, concluding that the verdict was not supported by substantial evidence. On the merits, the Supreme Court affirmed the Court of Appeals. Manifestly, the Government's right to certiorari to a Court of Appeals is not limited to pressing questions of Constitutional law. The following cases, selected at random, illustrate the consequences which may follow the Government's appeal from a Court of Appeals reversal of a trial court conviction. In each case the Court of Appeals reversal was in turn reversed and the cause remanded for further proceedings in conformity with the Supreme Court opinion, with no advertence to possible conflict with the Fifth Amendment. United States v. Rabinowitz, 339 US 56; United States v. Bryan, 339 US 323, 94 L ed 653, 70 S Ct 430; United States v. Fleischman, 339 US 349, 94 L ed 906, 70 S Ct 739; United States v. Alpers, 338 US 680, 94 L ed 457, 70 S Ct 352; United States v. Knight, 336 US 505, 93 L ed 845, 69 S Ct 704; United States v. Sheridan, 329 US 379, 91 L ed 359, 67 S Ct 332.

Reverting briefly to the field of state law, we find the right of the prosecution in New York to appeal an adverse intermediate appellate court decision to be approximately equivalent to the right of the Federal Government to certiorari to a Court of Appeals. The governing statute is NY Code Cr Proc § 519. See People v. Reed, 276 NY 5, 11 NE2d 330. Pursuant to its provisions, intermediate appellate court reversals of criminal convictions have been set aside and the convictions affirmed in the following cases, among others. People v.

Miller, 169 NY 339, 62 NE 418; People v. Gaffey, 182 NY 257, 74 NE 836; People v. La Barbera, 274 NY 339, 8 NE2d 884. In none of these cases was there a suggestion that prosecution appeals might constitute a deprivation of the defendant's guaranty against double jeopardy.

Why are prosecution appeals from intermediate appellate courts permitted so freely and without objection? It does not appear that the Supreme Court of the United States has yet been required to pass on the constitutionality of this practice. However, the reason appears to be that the defendant in taking the case to the Court of Appeals has himself 'waived his guaranty. Having waived the guaranty, he may be subjected to retrial. United States v. Ball, 163 US 662, 672, 41 L ed 300, 303, 16 S Ct 1192, and cases there cited. It follows that, if the Court of Appeals erred in reversing the conviction, it may thereafter be affirmed without the necessity for retrial, and without contravening guaranties against double jeopardy.

In military judicial procedure automatic consideration by a board of review is provided. Uniform Code of Military Justice, Article 66; Manual for Courts-Martial, United States, 1951, paragraph 100. Since there is no provision for appeal to this intermediate tribunal by an accused, no notion of waiver, strictly speaking, is available to sustain "prosecution appeals"—that is, certifications by a service Judge Advocate General. However, action by a board of review is always taken on behalf of an accused and in his interest. Literally he can never be prejudiced by this appellate review—for on retrial, if any, he cannot be tried for an. offense greater than that charged at the first trial, nor can he receive a sentence greater than that adjudged at the first trial. Uniform Code, supra, Article 63, 50 USC § 650; Manual for Courts-Martial, United States, 1951, paragraph 92; cf. United States v. Padilla and Jacobs (No. 400), 1 US CMA 603, 5 CMR 31, decided August 19, 1952. Since prejudice is impossible under this procedure, the evils contemplated by and even prompting the guaranty against double jeopardy are entirely inoperative. The provision for automatic review simply constitutes the device adopted by Congress for insuring that no man may stand convicted on an inadequate record. To rule that the consequences of its action contravene the Fifth Amendment would be palpably absurd, and would operate to penalize the legislative interest in insuring justice to members of the armed forces to the utmost extent possible. To put the matter in another way, the Fifth Amendment was intended to codify the common law principle against double jeopardy. During the period this principle was being formulated—and doubtless at the time the Amendment was adopted as well—automatic review on behalf of convicted accused persons was wholly unknown. Therefore, we meet here the problem—frequently observed in many legal areas—of attempting to reconcile an ancient rule or principle with a procedure unheard of when the rule came into existence. What safer solvent may be devised than the inquiry: may the procedure conceivably lead to evils which the rule was intended to obviate? What better criterion than the approach of no harm—no violation? For the present purpose, therefore, we hold that automatic board of review consideration on behalf of a convicted military person is tantamount to intermediate appellate review sought by the accused himself—this for the reason that the dangers of double jeopardy have been eliminated. A guaranty against evil is not contravened by a procedure which precludes that evil. Having thus legislated for the benefit of accused persons it was, of course, the prerogative of Congress to exact such conditions as it might deem necessary to protect the interests of both the Government and the accused. The condition it has placed on its grant of automatic board of review consideration is that this review shall be interlocutory only, dependent upon possible further action by this Court. The net remains the same, for the accused can never be the subject of final action which is more to his detriment than the original action of the court-martial which heard his case.

**IV**

*Was the decision and action of the board of review consistent with the decision and mandate of this Court?*

It follows from the foregoing, of course, that the third question must also be answered in the negative. All certified questions are, therefore, thus answered. Accordingly, the cause is remanded to The Judge Advocate General, United States Navy, for action not inconsistent with the views expressed herein.

Chief Judge QUINN and Judge LATIMER concur.