■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. KELLY JACKSON, Appellant.— Judgment, Supreme Court, New York County, rendered June 16, 1972, convicting the defendant, after trial, of criminally selling a dangerous drug in the second degree and sentencing him to an indeterminate term of imprisonment not to exceed six years, affirmed. The facts of this criminal case, as adduced at the trial, have been fairly presented in the dissent and do not need reiteration. However, contrary to our dissenting brother, we find that there was no prejudicial error extant at the trial. The main argument of the dissent is that testimony relating to prior uncharged criminal acts of the

defendant was elicited resulting in prejudice to the defendant. The police, immediately prior to the arrest of the defendant, had witnessed sales of narcotics involving two other buyers. The defendant had taken money from these prospective buyers and then via hand signal indicated the number of glassine envelopes to which the buyer was entitled. The buyer would then go to a female seated nearby and pick up the narcotics. It was testimony regarding these two prior " buys " which is deemed objectionable. However, even in *People* v. *Fiore* (34 N Y 2d 81) the Court of Appeals, while limiting the common plan or scheme doctrine enunciated in *People* v. *Molineux* (168 N. Y. 264), recognized that evidence of a connected but uncharged crime may be admissible as long as it is for a relevant purpose and as long as its introduction was not solely to show criminal propensity. (See, e.g., *People* v. *McKinney*, 24 N Y 2d 180, 184; *People* v. *Gaffey*, 182 N. Y. 257, 262.) In the case at bar, the connection was obvious, the incidents related having occurred almost immediately prior to the incident which was the subject of the indictment. The prior incidents connected the defendant via his *modus operandi* as well as his identity. Furthermore, with regard to the Judge's charge to the jury, we must note that a criterion of an adequate charge is one which relates the facts of the particular case to the applicable law (cf. *People* v. *Odell*, 230 N. Y. 481, 488; *People* v. *Lupo*, 305 N. Y. 448). In the case at bar, the examples given were not given in bad faith or as indicia of the predilections of the trial court towards the guilt or innocence of the defendant (cf. *People* v. *Ohanian*, 245 N. Y. 227). In the instant case, a fair overview of the instructions given to the jury reveal that it was a proper guide to the triers of the fact and enabled them to discharge their solemn responsibility effectively and objectively. In sum, the jury, properly instructed, was called upon to decide credibility issues, which issues were determined adversely to the defendant. Determinations of credibility being the peculiar province of the finders of fact should, generally, not be disturbed (*People* v. *Regina*, 19 N Y 2d 65, 78). Concur — Kupferman, J. P., Lupiano, Steuer and Lane, JJ.; Murphy, J., dissents in the following memorandum: Defendant stands convicted of criminally selling a dangerous drug to a person less than 21 years of age. I cannot vote to sustain this conviction because I do not believe this defendant received a fair trial or that all of the essential elements of that crime were established by competent, admissible evidence. Acting on certain previously obtained information, six police officers were on narcotics duty in the vicinity of St. Nicholas Avenue and West 127th Street. Three officers established an observation post in a second floor classroom of a public school, while the other three were in a nearby, unmarked police car. The purpose of their mission was to observe certain activities in front of two buildings, some 300 feet away, on West 127th Street. Patrolman Hart, with the aid of binoculars, saw defendant and a Miss Watson arrive and station themselves, some 8 to 12 feet apart, in front of the buildings under surveillance. Officer Hart was permitted to testify to certain observations made prior to the incident which led to defendant's arrest. Briefly stated, he told the jurors that he saw two unidentified males approach defendant, engage him in conversation and then hand him currency. Defendant then allegedly " pointed " several fingers " in the air ", whereupon Miss Watson was then observed passing an equivalent number of glassine envelopes to said unidentified individuals from a packet kept in a hard-top cigarette container. Although descriptions of these males were passed along to the backup team, neither one was apprehended. With this " background " now firmly implanted in the minds of jurors (thereby also redeeming the prosecutor's pledge in his opening to produce police witnesses who will " inform you that prior to [observing the alleged sale to the minor, Kenneth

Williams] they observed a series of transactions to an unknown person and to the defendant and Miss Stephanie Watson"), Officer Hart then testified to a similar occurrence involving Williams. This time, however, Hart was not as certain as to whether or not he actually saw a signal given, or which hand was used. In any event, he claims he saw Miss Watson hand Williams one glassine envelope, which Williams pocketed. Apparently mindful of past failures, Officer Hart then left his post, proceeded to the street, observed Williams walking along St. Nicholas Avenue, overtook him, removed a glassine envelope from Williams' right trouser pocket and placed him under arrest. Promptly thereafter defendant and Miss Watson were also arrested. Since all the members of the team were males, only the defendant (but not Miss Watson) was searched (and $76 found in his possession). No narcotics were found and the cigarette box was never recovered. During direct examination Officer Hart identified and described, over objection, certain previously taken pictures not then in evidence (but later placed in evidence by defense counsel) of the premises under observation. He testified that defendant and Miss Watson appeared in several of these pictures; although he was less certain about his identification of Miss Watson. Officer Wright, who took the pictures two weeks before the instant arrest and who was a member of the backup team that day, did not believe Miss Watson was the woman depicted in the photograph. None of the other officers testified to any incriminating acts. Instead, and despite defense counsel's objection to any statement on the matter, the prosecutor was permitted, before concluding his case, to inform the jury that he did not intend to call three other police officers who were available to testify. Under a grant of immunity (but cautioned by the Trial Judge several times that he could still be prosecuted for perjury or contempt), Kenneth Williams testified as to his date of birth (thereby revealing that he was 18 years of age when arrested in connection with the instant transaction); but denied ever purchasing narcotics from defendant or Miss Watson (although he admitted being a drug user and that he acquired narcotics that day, but from someone else). The jury had the right, of course, to disbelieve Williams' exculpatory testimony and to credit Officer Hart's version of what had transpired despite certain inconsistencies between the latter's testimony at trial and on the preliminary hearing. If credibility alone was involved I would not vote to disturb the jury's findings. (*People v. Regina*, 19 N Y 2d 65; *People v. Williams*, 6 N Y 2d 18.) However, I find too many prejudicial errors in the record before us to conclude that the judgment should be affirmed. Initially, I do not believe Williams' unsupported statement of his age, without a proper foundation first being laid, is sufficient to sustain the verdict. (See Richardson, Evidence [10th ed.], § 329, p. 300.) The effect of the insertion of this additional element was to raise the level of the offense from a class C to a class B felony. (Compare Penal Law, § 220.35 and § 220.40, subd. [1], repealed by L. 1973, ch. 276, § 18.) Of greater concern, however, was the improper introduction into this case of uncharged " crimes " that had the effect of tending to demonstrate defendant's criminal propensity. Defendant was charged with selling one glassine envelope, containing heroin, to a minor. Nevertheless, the trial court permitted the prosecution to adduce testimony and to refer to photographs relating to and depicting uncharged crimes committed prior to the instant arrest. Reference to these extraneous and highly prejudicial events began with the prosecutor's opening, continued during Officer Hart's testimony and was included in the People's summation as " these two prior sales ". The fact that defense counsel introduced the photographs into evidence does not cure the error in permitting Officer Hart to refer to them on direct examination in order to bolster the case.

Respondent seeks to justify Patrolman Hart's testimony concerning the two drug "sales" transacted immediately before appellant's alleged sale of heroin to Williams as necessary relevant background information to establish that defendant and Miss Jackson were involved in a rehearsed common scheme to sell narcotics. The difficulty here, however, is that no prior sales were ever established. At best, Officer Hart merely saw money pass, an apparent signal given and the transfer of one or more glassine envelopes. The two prior "customers" were never apprehended. The contents of those glassine envelopes were never analyzed. No drugs were ever found on defendant or Miss Watson. But even assuming, *arguendo*, that the photographs and the "background" testimony were properly introduced and that they disclosed illegal activities, "merely showing two or more similar crimes does not necessarily establish a common scheme. To some extent every criminal repeater has a *modus operandi*. But a *modus operandi* alone is not a common scheme; it is only a repetitive pattern." (*People* v. *Fiore*, 34 N Y 2d 81, 87.) The basic rule excluding evidence of prior unlawful conduct to establish criminal disposition is firmly established in this State. Only exceptional circumstances, requiring a showing of much more than mere similarity, will permit evidence of uncharged crimes to be received on a criminal trial. (*People* v. *Fiore, supra*; *People* v. *Molineux*, 168 N. Y. 264.) In my opinion, this case does not involve the rare occasion when such evidence would be properly admissible; and its obviously prejudicial effect on the jurors far outweighs its probative value. And while the trial court did give the jury brief instructions describing the limited purpose for which the evidence of other alleged crimes was admitted, I am not satisfied that the harmful effects were cured. (*People* v. *Fiore, supra*; *Krulewitch* v. *United States*, 336 U. S. 440, 453.) Additionally, the court's charge on the legal definition of "acting in concert" was clearly prejudicial to defendant. In explaining the concept the court stated, *inter alia*: "Suppose with knowledge of its contents I surreptitiously give you a glassine envelope containing heroin, telling you that it is heroin, to guard it carefully and instructing you to transfer this heroin to another person when I give you a prearranged signal. Suppose a short time later you see my signal and hand over the heroin to X. In this example you and I are both guilty of the offense of criminally selling a dangerous drug." The court's choice of its factual hypothetical, though undoubtedly unwitting, essentially presented the prosecutor's case, and obviously strengthened the case against defendant. Where, as here, only one witness (albeit a policeman) saw the alleged sale (with the aid of binoculars from a post 300 feet away), but concededly did not have the buyer under continuous surveillance; the alleged buyer, testifying under a grant of immunity, admitted to a "buy" that day, but not from defendant nor from Miss Watson; and no drugs were found in the possession of defendant or his "accomplice"; the Trial Judge's impermissible emphasis on the People's case, coupled with the other errors above referred to, cannot be passed off as harmless. (Cf. *People* v. *Mendes*, 3 N Y 2d 120; *People* v. *Intersimone*, 266 App. Div. 280.) Accordingly, the judgment of conviction should be reversed and a new trial directed.