■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES R. MACDONALD, Appellant.—Appeal from a judgment of the County Court of Montgomery County, rendered September 12, 1975, upon a verdict convicting defendant of the crime of attempt to commit sodomy in the first degree. On this appeal defendant claims: (1) that his guilt was not proven beyond a reasonable doubt; (2) that attempted forcible compulsion was not proved beyond a reasonable doubt, and (3) that the trial court erred in excluding evidence to show bias and hostility of the witness Carol Cozzocrea towards

defendant and his family. We find no merit in defendant's claims. The record shows sufficient evidence if believed by the jury to prove beyond a reasonable doubt that defendant committed the crime for which he was indicted. Defendant was vigorously defended by counsel of his own choosing. There was a sharp conflict in the evidence. The defendant testified in his own behalf and categorically denied the entire occurrence. Defendant testified he did not see the complaining witness Randolph Cozzocrea on the night in question, August 5, 1974, and that he did not run up Kline Street in Amsterdam, New York, that night. He did testify that he had been at Lorenzo's Restaurant with David Scott and Donald Hackert where he drank beer, but could not remember how many beers he drank there. Defendant testified after leaving Lorenzo's Restaurant he and Hackert went to Ralph's Delicatessen where he drank some more beer. He left Ralph's about 10:15 P.M. and went to his former upstairs apartment at 28 Swan Street by way of Market Street, Main Street, and Swan Street to get his "stuff out of the house" and a "three hundred dollar ring" where the police soon arrested him. The complaining witness, Randolph Cozzocrea, who lived in a downstairs apartment at 28 Swan Street in Amsterdam, New York, with his mother, was 12 years of age on August 5, 1974, and was in the eighth grade at the time of the trial. He testified about the occurrence in detail, which if believed, established defendant's guilt. He testified defendant was on Swan Street below his house at 28 Swan Street at about 9:30 P.M. when he was returning from Cervera's Drugstore where his mother had sent him for medicine for his sister. Defendant called to him and they were talking when Randolph's mother Carol Cozzocrea came out of the house at 28 Swan Street and called her son into the house. Just before Randolph left defendant, defendant asked him to bring him some matches. Randolph was sleeping on the front porch at 28 Swan Street that night and he left the house to deliver the matches to defendant. Defendant was then in an area referred to as "Green Mountain", at the foot of Swan Street and between Swan Street and Kline Street. According to Randolph's testimony, defendant told him he was a "little bit drunk" and that "to tell you the truth, I'm stoned". Randolph testified he gave defendant the matches and said he had to go home; defendant said wait a minute and then told Randolph "Let me blow you"; when Randolph said he had to go home defendant placed both hands on Randolph's shoulders and said if he did not let him do it, "he was going to do it anyway, because he's on speed"; that defendant started unbuckling Randolph's belt and unbuttoning his pants. Randolph testified he told defendant he would unbuckle his own pants and then he started to run. Defendant reached for Randolph but missed him and fell. Randolph ran up Kline Street screaming "help"; defendant was chasing him; he saw two girls on a porch on a house on Kline Street and ran up on the porch. Defendant was about 40 feet behind him; defendant ran past Randolph on Kline Street to Main Street. The two girls, Kelly Maskosky and Stephanie Perillo both testified they observed Randolph running up Kline Street calling "help" and saw defendant running up Kline Street soon thereafter. Carol Cozzocrea testified she recognized defendant with Randolph when she called to him when he returned from the drugstore. The Trial Judge charged the jury on the lesser includable offense of endangering the welfare of a child. In his summation, defendant's attorney advised the jury "in the final analysis, your obligation here is going to have to be to make a determination as to who's lying and who's telling the truth. It is as simple as that." By this verdict, the jury indicated they believed the witnesses for the prosecution. We find no reason to disturb the jury's verdict. The credibility of the

witnesses was exclusively for the jury *(People v Ohanian,* 245 NY 227). "Questions relating to the credibility of evidence, to whether particular evidence should be believed, and to the weight to be given to particular testimony, are questions for the trier of fact." (65 NY Jur, Witnesses, § 88.) The trial court did not abuse its discretion in limiting the evidence offered by defendant to show the bias and hostility of the witness, Carol Cozzocrea. "The extent to which an examination may go for the purpose of proving the hostility of a witness must be, to some extent, at least, within the discretion of the trial judge." *(People v Brooks,* 131 NY 321, 326; see, also, *People v McDowell,* 9 NY2d 12; Richardson, Evidence [10th ed], § 504.) The judgment must be affirmed. Judgment affirmed. Koreman, P. J., Sweeney, Mahoney, Larkin and Reynolds, JJ., concur.