UNITED STATES *v.* KNIGHT.

No. 406.   Argued March 4, 1949.—Decided April 4, 1949.

*Philip R. Monahan* argued the cause for the United
States.   With him on the brief were *Solicitor General
Perlman, Assistant Attorney General Campbell* and *Robert S. Erdahl.*

*Robert T. McCracken* argued the cause for respondent.
With him on the brief were *George G. Chandler* and
*J. Julius Levy.*

Mr. Justice Douglas delivered the opinion of the Court.

Robert Michael was trustee in bankruptcy of the Central Forging Co. and Donald Reifsnyder was his counsel. Maxi Manufacturing Co. was a competitor of Central and one of its creditors. George Fenner and respondent Harry S. Knight were attorneys for Maxi. After negotiations which it is unnecessary to relate here, a plan of reorganization under ch. X of the Bankruptcy Act, 52 Stat. 883, 11 U. S. C. § 501 *et seq.*, was approved by the court and accepted by more than two-thirds of the creditors. Under this plan Maxi was to acquire all the assets of Central; the stockholders of Central were to receive nothing; the secured creditors of Central were to receive 20 per cent and its unsecured creditors 5 per cent of their claims in bonds of Maxi; and all taxes, costs, and expenses of the reorganization were to be paid in full in cash by the trustee. The cash requirements of the plan were to be furnished by Maxi.

The amount of those requirements and the nature of Maxi's commitment are sources of the present controversy. Michael and Reifsnyder concededly obtained funds in connection with the reorganization for which they did not account. It is the theory of the prosecution that those funds were part of the bankruptcy estate. It is the theory of the defense that they were gifts by Maxi of its own property.

There was evidence (including Michael's testimony in this case and one construction of respondent's testimony concerning the same transactions in an earlier contempt case against Michael) that Maxi agreed to pay $26,404.33 in cash for Central's net current assets in addition to the $17,000 in bonds. If this version of the transaction were believed, there was a scheme to value the assets of Central at $3,000 less than $26,404.33 and to divert the $3,000 to Michael's and Reifsnyder's own ends.

There was another version of this phase of the plan which is also supported by evidence, *viz.* that Maxi was to pay in cash all expenses of the reorganization provided they did not exceed $26,404.33. In this view the difference between $26,404.33 and the expenses allowed by the Court, $23,404.33, was Maxi's to do with as it pleased.

The court confirmed the plan and ordered the transfer of all of Central's assets to Maxi on receipt of the bonds and on payment of the costs and expenses as allowed by the court, "within the limits of the funds as set forth in the Trustee's report filed April 15, 1942." That report listed the net current assets of Central at $23,404.33. There was some evidence that the value of those assets had been falsified in the report by deducting $3,000 from the accounts receivable.

The expenses approved by the court and paid by Maxi included allowances for the fees and expenses of Michael and Reifsnyder. Knight arranged for Maxi also to draw a check for $3,000 to Fenner which Fenner cashed and, after deducting $500 for income tax, paid over to Michael and Reifsnyder who never accounted to the court for it.

Knight and Fenner were indicted for aiding and abetting Michael to appropriate property of the bankruptcy estate in violation of the Bankruptcy Act, 30 Stat. 554, as amended, 11 U. S. C. § 52 (a),[1] and for conspiring with Michael and others to do the same. Knight and Fenner were found guilty by a jury on all counts. Knight was fined $1,000. The Court of Appeals reversed his conviction and directed entry of a judgment of acquittal, one

---

[1] "A person shall be punished by imprisonment for a period of not to exceed five years or by a fine of not more than $5,000, or both, upon conviction of the offense of having knowingly and fraudulently appropriated to his own use, embezzled, spent, or unlawfully transferred any property or secreted or destroyed any document belonging to the estate of a bankrupt which came into his charge as trustee, receiver, custodian, marshal, or other officer of the court."

judge dissenting. 169 F. 2d 1001. The case is here on a petition for certiorari which we granted because of the importance of the ruling in the administration of the Bankruptcy Act.

There was substantial evidence that Maxi agreed to pay $26,404.33 for the net current assets of Central and that Knight was party to a scheme to divert $3,000 of that consideration to the personal ends of Michael and Reifsnyder. It was therefore an improper interference with the jury's function for the Court of Appeals to reject that theory of the case and to accept one which to it seemed more credible. See *Glasser* v. *United States,* 315 U. S. 60, 80; *Kotteakos* v. *United States,* 328 U. S. 750, 763–764.

But even if, as the defense urges, Maxi only agreed to pay expenses up to $26,404.33, the result is the same. Maxi in fact paid that amount. It was paid in connection with the reorganization. It was paid for services allegedly rendered by Michael and Reifsnyder in the proceedings. It was paid secretly and in a devious way. The assets of the estate which were transferred to Maxi were worth $26,404.33. This is a substantial showing that $26,404.33 was in fact paid for the assets and that the form of the arrangement served only to syphon a part of the consideration to Michael and Reifsnyder without court approval.

All the consideration which is paid for a bankrupt's assets becomes part of the estate. No device or arrangement, however subtle, can subtract or divert any of it. It is the substance of the transaction, not its form, which controls. If that requirement were not rigidly enforced, control of the plan of reorganization [2] and control of

---

[2] Even after confirmation of the plan of reorganization under § 221 of ch. X, it may be altered or modified pursuant to the procedure prescribed in § 222.

allowances[3] would pass from the court to the parties. That would subvert the statutory scheme.

This consequence is sought to be avoided here by the argument that when the $3,000 was diverted to Michael and Reifsnyder, the rights of creditors and stockholders in the estate had been fixed and all the allowances had been determined. It is therefore said that there would have been no rightful claimants to the money had it been paid into court. By that procedure parties would arrogate to themselves the control over the estate which Congress has entrusted to the bankruptcy judge.[4]

*Reversed.*

Mr. Justice Murphy, Mr. Justice Jackson, and Mr. Justice Rutledge took no part in the consideration or decision of this case.

Mr. Justice Frankfurter, dissenting.

The Court of Appeals, speaking through one of the most conscientious and experienced of judges, thus summarized the problem of the case:

"The whole transaction was highly reprehensible and it may well have involved the commission of a criminal offense. Indeed under another indictment defendant Michael pleaded guilty to another charge growing out of these occurrences. The question before us, however, is not whether the defendant Knight committed any crime but only whether he aided and abetted Michael to violate Section 29, sub. a, in the manner described in the indictment." 169 F. 2d 1001, 1005.

---

[3] See §§ 241–244 of ch. X; *Leiman* v. *Guttman*, 336 U. S. 1.
[4] See note 2, *supra*.

The court concluded that the evidence did not support the charges made in the indictment and that the motion for a directed verdict should have been granted. At the bar of this Court the Government disavowed the presence of any question of law in the case except the question whether the record warranted submission of the case to the jury as the District Court thought, and as the Court of Appeals thought not. The Government conceded unreservedly that the correctness of this decision turns entirely on the facts of this particular case. We ought not to be called upon to canvass a record of 870 pages to determine whether the District Court properly viewed the facts in relation to the charge, or whether the appraisal made by the Court of Appeals was right. I do not propose to do so. One appellate review of the facts should suffice, even when the review goes against the Government.

It having appeared, after the writ of certiorari was granted, that the case merely involves weighing evidence, I think the writ should be dismissed as having been improvidently granted.