**In re A. L. RATNER, Inc.**

**No. 87227.**

United States District Court
S. D. New York.

Jan. 12, 1951.

A. Alan Reich, New York City, pro se and for Committee of Creditors.

SUGARMAN, District Judge.

Petitions to review two orders of a referee in bankruptcy.

The debtor proposed an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. The creditors' committee, appointed under § 338 of the Act, filed no application for allowance out of the debtor's deposit, for its actual and necessary expenses. Instead, the committee waived such allowance upon disclosing to the court that Cardick Trading Corporation, sole stockholder of the debtor, had undertaken, by agreement with the committee, to pay the fee of the committee's attorney and the fee and disbursements of its secretary.

The committee appraised the services of the attorney in excess of $1,500 and those and the disbursements of the secretary in excess of $827.93. Despite this evaluation, the committee indicated that Cardick Trading Corporation and the committee's counsel and secretary had agreed, with the committee's approval, provided no application would be necessary for attorney's and secretary's allowances in the arrangement, to pay the attorney $750 and the secretary $500, which sums were to be accepted by them severally, as full payment. The agreement for payments by Cardick Trading Corporation was fully disclosed in affidavits filed with the referee pursuant to General Order 41, 11 U.S.C.A. following section 53.

Upon learning of this agreement, the referee, on November 2, 1950, made the first of the two orders under review wherein he directed the committee "to file a petition for allowance of its expenses herein."

The committee complied and requested an allowance of $2,327.93 to pay a $1,500 fee to its counsel and a $750 fee and $77.93 disbursements to its secretary. Thereupon, the referee, on November 6, 1950, made the second order under review. He allowed the committee, for all purposes, as actual and necessary expenses, the sum of $277.93, to pay a $150 fee to its counsel and a $50 fee and $77.93 disbursements to its secretary. The committee and its counsel petitioned for review of both orders.

In each instance the referee, in support of his order, wrote a memorandum. As to the first order, that of November 2nd, directing the committee to file a petition for allowance of its expenses, the learned referee wrote: "Section 337(2) mandates the court to allow the amount; and only such amount can be paid directly or indirectly. The right to waive payment is only the right to waive the amount the court allows. There is no right of the parties to waive the court's jurisdiction to determine the amount of the allowance for expenses of the committee. The Supreme Court has refused to sanction any device by which compensation for services in a Chapter X proceeding may be fixed other than by the court of bankruptcy (Leiman v. Guttman, 336 U.S. 1 [69 S.Ct. 371, 93 L.Ed. 453]; United States v. Knight, 336 U.S. 505 [69 S.Ct. 704, 93 L.Ed. 845]). The wording of Chapter X as to sole jurisdiction of the court of bankruptcy to fix allowances is more explicit than Section 337(2). Yet, I think that Section 337(2) requires that the court only to (sic) fix the amount of allowance for expenses of the committee, especially, in view of the fiduciary duty of the committee in acting for creditors. Submit order requiring committee to file petition for allowance of its expenses."

As to the second order, that of November 6, fixing the allowance of the committee for actual and necessary expenses incurred, the learned referee in his memorandum classified the services of the attorney and secretary into those which were legal and secretarial, as distinguished from those performed in inducing the creditors to accept the debtor's arrangement and concluded that the legal and secretarial services were worth $150 and $50 respectively.

Obviously, if the earlier order of November 2, directing the committee to file its petition for the fixation of its allowance, was invalid, then the order of November 6, passing upon the amount of allowance, was likewise invalid.

I am of the opinion that the referee lacked the power to make the order of November 2, 1950. The Leiman v. Guttman and United States v. Knight cases, relied

on by the learned referee, dealt with Chapter X proceedings. In the Leiman decision, Justice Douglas' opinion clearly points out that that holding was predicated upon the specific language of § 221 of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 621. The opinion, 336 U.S. at page 5, 69 S.Ct. at page 372, notes that under subdivision (4) of that Section, there is placed under the referee's control " * * * 'all payments made or promised' (1) by 'the debtor' or (2) 'by a corporation issuing securities or acquiring property under the plan' or (3) 'by any other person' for services rendered 'in connection with' the proceeding or 'in connection with' the plan and 'incident to' the reorganization."

The history of the legislation is then reviewed thus:

"The aim of the expanded controls over reorganization fees and expenses is clear. The practice had been to fix them by private arrangement outside of court. The deposit agreement under which committees commonly functioned was viewed as a private contract, which granted the committee a lien on the deposited securities for its fees and expenses. By terms of the agreement the committee was normally the sole judge of their amount. This gave rise to serious abuses. There was the spectacle of fiduciaries fixing the worth of their own services and exacting fees which often had no relation to the value of services rendered. The result was that the effective amount received by creditors and stockholders under the plan was determined not by the court but by reorganization managers and committees.

"Hence Congress instituted controls, controls which became more pervasive as § 77B [11 U.S.C.A. § 207] was evolved into Ch. X [11 U.S.C.A. § 501 et seq.]. Section 211 requires that a committee file with the court a statement disclosing specified information, including the agreement under which it operates. The scrutiny clause of § 212 gives the court power to set aside any of the provisions of such an agreement which it finds to be 'unfair or not consistent with public policy.' And § 221(4) is written in pervasive terms—it applies to

'all payments' for services 'in connection with' the proceeding or 'in connection with' the plan and 'incident to' the reorganization, whoever pays them. A statute establishing such broad supervision over committees cannot be presumed to be niggardly in its grant of authority when it deals with the matter which of all the others has the most direct impact on those whom it aims to protect." 336 U.S. at page 6, et seq., 69 S.Ct. at page 373.

One seeks in vain for comparable language in Chapter XI. It is true that the Leiman decision, by virtue of § 242 of Chapter X, holds that "these petitioners are included in the classes of claimants to whom the judge is empowered to allow reasonable compensation."

However, § 242 of Chapter X is part of a comprehensive scheme of control over all "Compensation and Allowances" dealt with in Article XIII of that Chapter. This deliberate structure is indeed a far cry from the isolated phrase at the end of § 337(2) of Chapter XI ("in such amount as the court may allow") upon which the learned referee built his power to make the order of November 2nd. Admittedly, Chapter XI contains no counterpart of Article XIII of Chapter X of the Bankruptcy Act, and I find nothing in the agreement here under inspection that transgresses anything contained in Chapter XI, Article IX which deals with the "Confirmation of Arrangement". What was said in the Knight decision in no way alters the foregoing.

While I am conscious of the absence of any one to bring about a review of this determination, I am nevertheless impelled to the holding that if the device resorted to in this case is inimical to sound public policy, the correction thereof, as was the case of reorganizations under Chapter X, must flow from the Congress and not from the courts.

Whether this decision, based as it is upon unique facts, is the harbinger of future nefarious practices, in Chapter XI arrangements, cannot be foretold. If so, Congressional correction will undoubtedly ensue. For the present, however, I am here confronted with a specific statute and ab-

sent therein the clear manifestation, as is contained in Chapter X, of any authority to examine the agreement entered into herein, that power must be denied. The court cannot judicially engraft upon the statute that which is obviously lacking.

I emphasize that I am dealing solely with the referee's power to pass upon an agreement for compensation to be paid to the attorney and secretary of the committee, by one other than the debtor for services rendered in or in connection with the arrangement proceeding. I do not venture any opinion as to the referee's jurisdiction to confirm the arrangement under § 366 of the Bankruptcy Act when full disclosure of the extraneous agreement has been made, as here, pursuant to General Order 41.

The learned referee's order of November 2, 1950, compelling the committee to petition for its allowance of actual and necessary expenses, was improper and is, therefore, reversed.

In view of the disposition of the aforesaid order of November 2, it must follow that the order of November 6, 1950, fixing the committee's expenses, was also improper and is likewise reversed.