Benjamin J. RUDIN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 13330.

United States Court of Appeals
Sixth Circuit.
April 19, 1958.

Fred R. Walker, Detroit, Mich. (William G. Comb, Detroit, Mich., on the brief), for appellant.

Robert E. DeMascio, Asst. U. S. Atty., Detroit, Mich. (Fred W. Kaess, U. S. Atty., Detroit, Mich., on the brief), for appellee.

Before MILLER and STEWART, Circuit Judges, and MATHES, District Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

Following trial by jury and a verdict of guilty, the appellant received a sentence of six months imprisonment for fraudulently concealing from the Trustee in Bankruptcy of the Detroit Central Wholesale Grocery Company certain cash and merchandise inventory which was property belonging to the estate of the bankrupt, in violation of Section 151, Title 18 U.S.Code. On this appeal he contends that the District Court erred (1) in denying his motion to dismiss the indictment, made prior to the trial of the case and renewed at the close of the Government's case, upon the grounds (a) that the statute of limitations had run prior to the return of the indictment and (b) that the indictment did not charge an offense within the purview of the statute, and (2) in denying his motion for judgment of acquittal, made at the conclusion of the Government's case, upon the grounds that the evidence was not sufficient to submit the case to the jury or to support a conviction.

The indictment, which was returned on March 10, 1953, charged that on or about March 16, 1950, the appellant did unlawfully and fraudulently conceal "from Orland H. Ellis, Trustee of Detroit Central Wholesale Grocery Company, a Michigan Corporation, cash in the amount of $66,013.30 and merchandise inventory consisting of miscellaneous groceries in the amount of $57,665.07, which were the property of said corporation; said defendant then being the President and Treasurer of said corporation and which said corporation was duly adjudicated a bankrupt on January 27, 1950, in the United States District Court in Detroit, Michigan; said Orland H. Ellis being appointed Trustee by Arthur A. Koscinski, District Judge, March 1, 1950, and becoming duly qualified by filing bond in the amount of $10,000.00 on March 4, 1950, * * *."

The applicable statute of limitations is three years. Section 3282, Title 18 U.S.Code. Appellant contends that the statute of limitations commenced to run when the trustee qualified by filing the required bond on March 4, 1950, at which time the assets of the bankrupt estate were concealed from him, and that the indictment, having been returned on March 10, 1953, was beyond the three-year period.

Section 3284, Title 18 U.S.Code, provides that the concealment of the assets of a bankrupt shall be deemed to be a continuing offense until the debtor shall have been finally discharged or a discharge denied, "and the period of limitations shall not begin to run until such final discharge or denial of discharge." Section 32, sub. a, Title 11 U.S.C.A., provides that the adjudication of any person, except a corporation, shall operate as an application for a discharge and that a "corporation may, within six months after its adjudication, file an application for discharge in the court in which the proceedings are pending." The bankrupt corporation did not make an application for discharge in bankruptcy, nor was an order entered denying the bankrupt a discharge. The indictment alleges that the corporation was adjudicated a bankrupt on January 27, 1950. Accordingly, it had until July 27, 1950, to apply for its discharge. Computing the three-year statute of limitations from that date means that the indictment was returned well within the required time. Winslow v. United States, 9 Cir., 216 F.2d 912.

In support of his contention that the indictment did not charge an offense within the purview of the statute, appellant points out that the indictment charges him with concealing from the Trustee in Bankruptcy of Detroit Central Wholesale Grocery Company, a Michigan Corporation, cash and merchandise "which were the property of said cor-

**48**

poration" and that it failed to charge that the property concealed belonged to the estate of the bankrupt. Section 152, Title 18 U.S.Code, under which the indictment was brought, provides that whoever fraudulently conceals from the trustee in any bankruptcy proceeding "any property belonging to the estate of a bankrupt" shall be guilty of an offense. In other words, it is contended that the indictment charges that the concealed assets were the property of the corporation rather than that they belonged to the estate of the bankrupt. This contention disregards other allegations of the indictment, namely, that the defendant was "the President and Treasurer of said corporation and which said corporation was duly adjudicated a bankrupt on January 27, 1950 in the United States District Court in Detroit, Michigan."

■ It is, of course, settled law that in order for an indictment to be valid it must allege all of the elements which are necessary to constitute a violation of the statute. But it is not necessary that the indictment follow the exact wording of the statute. Dunbar v. United States, 156 U.S. 185, 190, 15 S.Ct. 325, 39 L.Ed. 390; United States v. Marcus, 3 Cir., 166 F.2d 497, 501. The test of the sufficiency of an indictment is that it must sufficiently apprise the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, that the record show with accuracy to what extent he may plead a former acquittal or conviction. Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861; Anderson v. United States, 6 Cir., 215 F.2d 84, 86–87, certiorari denied, Lewis v. United States, 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 698, rehearing denied, 348 U.S. 922, 75 S.Ct. 291, 99 L.Ed. 723. As stated by the court in United States v. Debrow, 346 U.S. 374, 378, 74 S.Ct. 113, 98 L.Ed. 92, it is inconceivable to us how the defendant could possibly be misled as to the offense with which he stood charged. Reading the indictment in its entirety, it is clear that it charges the appellant with concealing from the Trustee in Bankruptcy property belonging to the estate of the bankrupt, although the exact words of the statute were not followed. Pallett v. United States, 5 Cir., 228 F.2d 671, 672, Rule 52(a), Rules of Criminal Procedure, 18 U.S.C.

■ With respect to the merits of the case, the evidence showed the following. A Receiver was appointed for the Detroit Central Wholesale Grocery Company, who took possession of the premises on December 27, 1949.* He made a physical inventory of the assets on the premises as of the time they were taken over by him, which was in the amount of $57,690.11. The Company was adjudicated a bankrupt on January 27, 1950. A Trustee in Bankruptcy was appointed, who qualified on March 4, 1950. He received the books and records from the Receiver and took over the bankrupt estate. The books showed an inventory of $184,320.66 at the close of the fiscal period April 30, 1949. An examination of the books and records was made for the Receiver by an accountant, Duffield, and for the Trustee by an F. B. I. Agent-Accountant, Berglund. In making his examination and analysis of the affairs of the bankrupt, Berglund also interrogated certain employees and other persons who had done business with the bankrupt. The Government relied mainly in presenting its case upon the testimony of Duffield and Berglund who stated what their respective examinations disclosed. The books and records which formed the basis for their testimony were introduced in evidence and made available for inspection and examination and for use in cross-examination. Under the general well settled rule, their testimony was admissible and was properly received in evidence. United States v. Johnson, 319 U.S. 503, 519, 63 S.Ct. 1233, 87 L.Ed. 1546; United States v. Marachowsky, 7

* There is some testimony that this date was December 24, 1949. We consider the conflict immaterial.

Cir., 201 F.2d 5, 18, certiorari denied, 345 U.S. 965, 73 S.Ct. 949, 97 L.Ed. 1384; Hoyer v. United States, 8 Cir., 223 F.2d 134, 138.

Duffield testified that he considered the inventory on hand on April 30, 1949, to which he added purchases in the amount of $703,361.66 during the period from May 1, 1949, to the close of business on December 27, 1949, making a total of $887,682.32 of merchandise available for sale. For the same period there were total sales in the amount of $732,009.71. He reduced the sales to cost by deducting a markup of 6.7 per cent of cost, based on other evidence hereinafter referred to, resulting in the figure of $682,965.06. The sum of the inventory on hand at the close of business and the amount of sales for the period of May 1, 1949, through December 27, 1949, namely, $740,655.17, represented the total merchandise accounted for. He subtracted this from the total merchandise available for sale, $887,682.32, to determine the amount of merchandise not accounted for. The resulting shortage was $147,027.15.

Appellant criticises Duffield's analysis and resulting conclusion in that it admittedly was an examination and analysis of the books as he found them, rather than a certified audit, and that the witness included in his written report important cautionary observations. These were, that it had been the consistent practice of the Company to record, by adjusting journal entries, at year-end closing dates, certain previously unrecorded cash sales receipts; that any unrecorded cash sale receipts would materially affect the inventory difference; and that "Since the date of this examination is not a year-end closing date no similar adjusting journal entries appear on the books. Based upon the consistent practices and the pattern set by the Company in prior periods, it is our opinion that the inventory difference represents unrecorded transactions for which proper accounting has not been made on the books." On cross-examination, the witness admitted that if such sales had been made and no accounting had been made of them on the books "obviously, that would be a type of entry or transaction that would partially account for, or I should say account for, any difference in inventory."

Such criticism has considerable merit. But it goes to the weight of the evidence, not to its admissibility. Book entries, which on their face are apparently bona fide, are admissible in evidence, although, of course, not conclusive. Woodworth v. Commissioner, 6 Cir., 218 F.2d 719, 723; Martins Fork Coal Co. v. Harlan-Wallins Coal Corp., 6 Cir., 83 F.2d 967, 970. Compare: Hopkins Ex'x v. Osborne, 278 Ky. 229, 128 S.W.2d 575, 142 A.L.R. 1403. The testimony of the witness was based on the books as kept by the bankrupt. They were the best and most complete evidence available. The extent to which they were incomplete was chargeable to the appellant. The opportunity was available to him to explain or supplement what they disclosed. Compare: Gotham Silk Hosiery Co. v. Artcraft Silk Hosiery Mills, Inc., 3 Cir., 147 F.2d 209, 214–215; Doll v. Glenn, 6 Cir., 231 F.2d 186, 188. In the absence of impeaching or supplemental evidence on the part of appellant, the jury was entitled to consider this evidence, giving to it such weight as they considered proper in the light of appellant's criticism thereof.

Duffield also testified about a journal entry deemed by him deserving of special attention because of its unusual nature. The journal entry was dated April 30, 1949, and consisted of a debit to an account on the books called "Loan, Receivable, Ben J. Rudin," with the explanation, "To set up loans made by Mr. Rudin to pay personal debts assumed from corporation in August 1947." It was entered as a credit to the "Cash Sales Account." In the opinion of the witness, there was no correlation between the two entries of 1947 and 1949. He testified that he could not trace any of the funds for the loan accounts, and from the manner in which the entry was made, he was of the opinion that the

money flowed into the corporation by virtue of cash sales but never reached the coffers of the corporation and was appropriated by the appellant by this entry in satisfaction of his using those funds to pay off debts which he claimed to have assumed in 1947. However, there was testimony showing that three of the debts or loans referred to by the entry, totaling $34,900.00, were either false or repaid by merchandise of the bankrupt.

Berglund, the F. B. I. accountant, also started with the beginning inventory of May 1, 1949, and added to it the total purchases for the period of May 1, 1949, through December 27, 1949, to determine the amount of merchandise to be accounted for. He added to the inventory on hand at the close of business the cost of sales during the period to determine the amount of merchandise that was accounted for. However, he made certain adjustments in the total purchases and also in total sales by reason of certain sales returns. In computing total sales, he made three separate findings, (1) assuming all sales had been made at cost, which resulted in a merchandise shortage of $97,221.10, (2) using a 5% markup established by interviewing various salesmen and employees of the bankrupt, which increased the shortage to $132,077.51, and (3) using the gross profit markup on cost of 3.75 per cent, with a resulting shortage of $123,678.37, which was the amount charged in the indictment. The claimed incompleteness of the books upon which this testimony was based has been previously referred to and discussed. Its weight was a question for the jury.

The Government also introduced testimony concerning transactions between the bankrupt and three different companies, Supreme Wholesale Grocery Company, 3 G's Wholesale Foods Company, and General Tobacco and Grocery Company. During the period from May 1, 1949, through December 27, 1949, the books of the bankrupt contained entries of purchases by the bankrupt from Supreme in the amount of $71,839.72, although sales by Supreme to the bankrupt as shown by the books of Supreme were only $23,254.92. The Government contended that by charging this excess amount of $48,584.80 to an expense account, such as purchases, the appellant avoided the need to account for this amount as income to the bankrupt.

Appellant challenged the accuracy of the entries in Supreme's books by reason of claimed adjustments not reflected by Supreme's books and by the contention that it was just as possible for the books of Supreme to be incorrect as it was for the books of the bankrupt to be incorrect. Appellant contends it was error on the part of the District Judge in permitting the witness Johnson, a certified public accountant, who had five years experience in assisting the personnel of Supreme in completing the mechanics of bookkeeping and preparation of tax returns, to give his opinion, based on his knowledge of the books of Supreme, that the $48,584.80 was to be more properly considered as an overstatement of purchases by the bankrupt rather than an understatement of sales on the books of Supreme. Johnson gave his reasons for expressing such an opinion.

■ Although opinions and conclusions by the usual non-expert witness are objectionable as attempting to invade the province of the jury, such testimony by one who has particular training and experience in a special field of activity with which the usual juror is to a large extent unfamiliar, is admissible for the consideration of the jury to assist it in reaching its verdict, it being recognized, of course, that such opinions and conclusions are not binding on the jury and are to be given such weight as the jury in its judgment thinks they should be accorded. Detroit, T. & I. R. Co. v. Banning, 6 Cir., 173 F.2d 752, 756; People's Gas Co. of Ky., Inc., v. Fitzgerald, 6 Cir., 188 F.2d 198, 201. The evidence was properly admitted. The District Judge was not in error in submitting this issue for the consideration of the jury.

Berglund also testified about unrecorded sales on the bankrupt's books

to 3 G's Wholesale Grocery Company, supported by invoices and checks, and an unrecorded sale of $1,224.00 to General Tobacco and Grocery Company, supported by an invoice and a cancelled check in payment thereof. If Berglund's testimony about the transactions with Supreme Wholesale Grocery Company and these two customers was accepted by the jury, it resulted in cash unaccounted for in the amount of $66,013.-30. This constituted that much of the total shortage of $123,678.37, leaving $57,665.07 of merchandise still unaccounted for. These respective amounts of unaccounted for cash and merchandise were the amounts charged in the indictment.

Witness Jakubowski, employed by the bankrupt as accounts receivable bookkeeper and cost clerk, testified that he received the information which he recorded, from the appellant, that he kept the records as accurately as possible to the best of his ability, and that he would submit a cost list of items to appellant who would pencil thereon the suggested selling price. The markup was usually six or seven per cent, sometimes, ten per cent. This witness also testified that on one occasion he made a cash deposit of $1,000.00 in a bank account in the name of Mrs. Rudin, who was an inactive employee. He remained employed on the premises of the bankrupt, and on one occasion while he was working on the invoice payroll records for the year, he received a telephone call from the appellant who said he was at his lawyer's place of business and asked Jakubowski to throw the books out the window and bring them down to him.

The Government also introduced evidence that during the period of May 1, 1949, through December 1949, appellant made deposits in his personal bank account of $30,787.18, of which $18,625.00 was cash, and that appellant's wife made deposits in her personal bank account of $160,825.98, of which $134,042.00 was cash. Appellant maintained a safety deposit box, to which access was given him according to the records of the bank on fourteen different occasions during the period under consideration. There was also other evidence on behalf of the Government, which we believe it is unnecessary to review.

Appellant's testimony in his own behalf, in our opinion, failed to rebut the reasonable inferences to be drawn by the jury from the Government's evidence hereinabove reviewed. Such evidence was sufficient to take the case to the jury and sustain the verdict. Battjes v. United States, 6 Cir., 172 F.2d 1, 5; United States v. Knight, 336 U.S. 505, 508, 69 S.Ct. 704, 93 L.Ed. 845.

The judgment is affirmed.