**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Leonard LUXENBERG, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George ZIMMERMAN, Defendant-Appellant.**

**Nos. 16080, 16964.**

United States Court of Appeals
Sixth Circuit.

Feb. 17, 1967.

Adrian B. Fink, Jr., Cleveland, Ohio, for appellant, Luxenberg. James J. Carroll, Cleveland, Ohio, for appellant, Zimmerman, George J. McMonagle, Cleveland, Ohio, on the brief.

Dominic J. Cimino, Asst. U. S. Atty., Cleveland, Ohio, for appellee, Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, on the brief.

Before O'SULLIVAN and ED-WARDS, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

Leonard Luxenberg and George Zimmerman, the defendants-appellants, hereinafter referred to by name or as defendants, were convicted in the United States District Court for the Northern District of Ohio on the fourth and fifth counts of an indictment. One Mervin L. Gold was indicted in the first three counts of the same indictment, and was tried before a jury and found guilty on all three counts. All five counts involved a fraud on Cosmopolitan Small Business, Inc., hereinafter called Cosmopolitan, a licensee of the Small Business Administration, referred to herein as the Administration, an agency of the United States.

The defendants Luxenberg and Zimmerman was granted a severance and were tried separately from Gold. They waived a jury and were tried to the court on the fourth and fifth counts of the indictment. The fourth count of the indictment charged that the defendants conspired with Gold, with Feature Products of Indianapolis, with Feature Products of Cleveland, and with each other, to misapply and defraud Cosmopolitan of $28,000, which sum belonged to and was entrusted to the care of Cosmopolitan by the Administration, an agency of the United States, in violation of Sections 371 [1] and 657 [2], Title 18, U.S.C. The

1. "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

2. "Whoever, being an officer, agent or employee of or connected in any capacity with * * * any small business investment company, * * * embezzles, abstracts, purloins or willfully misapplies any moneys, funds, credits, securities or other things of value belonging to such institution, or pledged or otherwise intrusted to its care, shall be fined not more

fifth count charged that the defendants aided and abetted [3] Gold in the fraud and in the misapplication of the $28,000 fund, as alleged in the fourth count of the indictment.

The pertinent facts as alleged may be stated as follows: Luxenberg was the sole stockholder of two corporations, Feature Products of Indianapolis and Feature Products of Cleveland. Zimmerman was the secretary and attorney for both of these corporations. The Administration is an agency of the United States whose principal purpose is to license small business investment companies with authority to make loans and invest in small business concerns. Cosmopolitan, an Ohio corporation, applied to the Administration for a license. Gold was the undisclosed organizer and manager of Cosmopolitan and the applicant for this license. Upon request of Gold, Zimmerman did the legal work in incorporating Cosmopolitan and in making its application for the license. The name of Gold did not appear in any capacity in any of the documents submitted to the Administration. It was represented in these documents that Cosmopolitan had on deposit in its account at The Continental Bank of Cleveland the sum of $155,000. This was a false statement. Zimmerman requested the Administration to transmit to Cosmopolitan the license and matching funds of $150,000. The address of Zimmerman and Cosmopolitan was the same suite of the Engineers' Building in Cleveland. The Administration granted the license and issued a United States Treasurer's check to Cosmopolitan for $150,000. This is the only sum ever credited to the account of Cosmopolitan at the Continental Bank of Cleveland, which account was under the control of Gold.

After Gold obtained control of this money, he instructed Zimmerman to act as escrow agent in the handling of a $28,000 and a $32,000 loan to Feature Products of Indianapolis. Zimmerman had his associate, Eugene Stevens, prepare escrow papers for the execution of the loan. Gold delivered to Zimmerman Cosmopolitan's checks for $28,000 and $32,000 payable to Eugene Stevens. These checks were deposited at the Society National Bank in the escrow account of Zimmerman and Stevens. Among the escrow papers were the following:

1. A promissory note for $39,200, dated March 23, 1961, from Feature Products of Indianapolis to Cosmopolitan. This note bore the signature of Leonard Luxenberg as president.

2. A promissory note for $44,800, dated March 29, 1961, payable to Cosmopolitan by Feature Products of Indianapolis. This note also bore the signature of Leonard Luxenberg as president.

3. An unsigned and unexecuted resolution of Cosmopolitan's Board of Directors, dated March 23, 1961, authorizing the loan of $28,000 to Feature Products of Indianapolis.

4. An unsigned and unexecuted resolution of Cosmopolitan's Board of Directors, dated March 29, 1961, authorizing the loan of $32,000 to Feature Products of Indianapolis.

On March 27, 1961, Zimmerman's check for $28,000 was issued to Feature Products of Indianapolis. This check was charged to the escrow account of Zimmerman and Stevens at the Society National Bank. At the request of Gold the $32,000 was withdrawn from the escrow proceedings. The $28,000 check was credited to the account and credit of Feature Products of Indianapolis, in the Indiana National Bank of Indianapolis, on March 29, 1961. On March 29, 1961, Feature Products of Indianapolis issued its check for $27,000, drawn on the Indiana National Bank, payable to Feature Products of Cleveland. Zimmerman, as secretary of Feature Products of

---

3. Section 2(a), Title 18, U.S.C.

"Whoever commits an offense against the United States, or aids, abets, counsels, than $5,000 or imprisoned not more than five years, or both; * * *"

commands, induces, or procures its commission, is a principal."

Cleveland, caused a certified resolution, dated March 29, 1961, to be filed with the National City Bank of Cleveland, authorizing the opening and maintenance of an account in the name of Feature Products of Cleveland, and permitting withdrawal of funds from the account by Len Luxenberg, president, and M. A. Singer, manager. Under date of April 4, 1961, Feature Products of Cleveland issued two checks totaling $26,000, payable to Mervin L. Gold and signed by Len Luxenberg. These two checks were deposited and credited to Gold's personal account at the Continental Bank at Cleveland. The remaining $2000 was never disbursed to either Gold or Cosmopolitan. The alleged loan of $28,000 to Feature Products of Indianapolis, for which Luxenberg, as president, executed a promissory note, was never paid to Cosmopolitan.

■ Both defendants assign as error the trial judge's denial of their motion to dismiss the indictment on the ground that it was based on their testimony before the grand jury in violation of their privilege against self-incrimination. The fifth amendment's privilege against self-incrimination in criminal cases [4] is applicable in proceedings before a grand jury. United States v. Monia, 317 U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376; Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110. The extent to which one must be advised of this right depends upon whether one is a defendant in custody of the authorities or whether one is merely a witness. One who is a defendant must be advised that he may refuse to answer incriminating questions and that anything he says may be used against him. A person testifying before a grand jury as a witness need not be so advised, but does retain the right to decline to give an incriminating answer. Stanley v. United States, 245 F.2d 427 (C.A.6); United States v. Benjamin, 120 F.2d 521 (C.A.2); Mulloney v. United States, 79 F.2d 566 (C.A.1), cert. den. 296 U.S. 658, 56 S.Ct. 383, 80

L.Ed. 468. This Court has held that a person who is virtually in the position of a defendant must be accorded the same rights as a defendant. Stanley v. United States, supra. Consequently a person against whom the prosecuting attorney is not seeking an indictment need not be advised of his right to refuse to answer incriminating questions. United States v. Parker, 244 F.2d 943 (C.A.7), cert. den. 355 U.S. 836, 78 S.Ct. 61, 2 L.Ed.2d 48. The fact that a person appeared in the capacity of a witness and testified before a grand jury without being so advised, does not furnish a basis for dismissing an indictment subsequently returned against such individual based, in part, upon his testimony. United States v. Scully, 225 F.2d 113 (C.A.2), cert. den. 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788. It is the duty and right of such witness to invoke the privilege against self-incrimination and refuse to answer questions.

■ The stipulated facts in this case demonstrates that this assignment of error is without merit. Zimmerman and Luxenberg testified before a grand jury investigating the business operations of Mervin Gold. Neither was advised of his right to refuse to answer incriminating questions. On the basis of this and other testimony, the grand jury returned indictments against both defendants. The crucial fact stipulated by the parties was that no "criminal proceedings were pending, or threatened against either of them; * * * nor * * * (was) the United States * * * then seeking an indictment against either of them."

By their own stipulations Zimmerman and Luxenberg testified as witnesses, not as defendants or persons in the position of defendants, before the grand jury. The fact that they made statements from which the grand jury could return an indictment, does not change the fact that their appearances before the grand jury were in the capacity of witnesses. While so testifying they had the right to invoke the privilege against self-incrimi-

---

4. "No person * * * shall be compelled in any criminal Case to be a witness against himself, * * * *"

nation, and their failure to do so, in view of the facts of this case, cannot be grounds to dismiss the indictment.

■ Both defendants claim that the trial judge committed reversible error in refusing to permit them to inspect the minutes of the grand jury which returned the indictment against them. The substance of their argument is that without these minutes the defense was hampered in presenting evidence to show that the defendants were virtually in the positions of defendants at the time they were subpoenaed before the grand jury. An examination of the record indicates that no request was made for inspection of the minutes for the purpose claimed in the briefs of appellants. The only reference in the present record to the grand jury minutes is a colloquy [5] between the court and counsel in connection with the direct-examination of George Zimmerman on the motion to dismiss the indictment.

The Supreme Court, in Dennis v. United States, 384 U.S. 855, 869, 86 S.Ct. 1840, 16 L.Ed.2d 973, while recognizing " 'the long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts' " reaffirmed the holding of Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323, rehearing den. 361 U.S. 855, 80 S.Ct. 42, 4 L.Ed.2d 94, that upon demonstration of a "particularized need" a trial judge may permit the production and examination of the grand jury's minutes. The "particularized need" present in both the *Dennis* and *Pittsburgh Plate Glass Co.* cases was the possible impeachment of witnesses upon cross-examination at the trial. In the present case the attorney for Zimmerman requested production of the minutes to substantiate facts which were already stipulated. The trial judge, in the absence of a showing of a valid need for their production, properly refused to permit the defense to examine them.

■ Defendant Luxenberg's contention that he was denied due process

---

5. "Mr. McMonagle: Your Honor, in order to follow through in some orderly manner as to the evidence to be now adduced, I would like to request the District Attorney to hand to me the Minutes of the Grand Jury proceedings pertaining particularly now to this witness, just for the purpose of handling the matter in an orderly manner.

"The Court: What do you purpose to go into?

"Mr. McMonagle: With reference to the admonition to the witness, that he was a witness before the Grand Jury, and also as to the purpose for which he was called before the Grand Jury.

"Mr. Cimino: Your Honor, that has already been stipulated and, of course, we violently object to the handing over of Grand Jury minutes to counsel for the defendants. The statements therein and the proceedings are secret.

"The Court: I see no reason to give you the minutes of the Grand Jury at this time. It has been stipulated that they were not advised of their rights.

"Mr. Fink: Your Honor, might we then suggest that the minutes might be made available to the Court?

"The Court: They have been made available to me, and I thought that was agreed upon before recess in chambers, and I have read them.

"Mr. Fink: Oh, they have been? We didn't know that.

"The Court: I have read the testimony of Zimmerman and Luxenberg. I certainly would not except that certainly I understood it was stated to me very clearly in chambers that neither of you had any objection to my reading them.

"Mr. Fink: No, we don't, your Honor.

"Mr. McMonagle: We said that.

"Mr. Fink: We were hoping they would give them to you now.

"The Court: I thought that was satisfactory that it be done.

"Mr. McMonagle: Well, your Honor, let me then incorporate those minutes in this proceeding, so you have the testimony as to what we are going to submit—

"The Court: Just a moment. The stipulation shows these gentlemen were called to testify before the Grand Jury as witnesses; they were subpoenaed; that as a result of their testimony, at least partly as a result of their testimony, they were indicted. I feel that in view of the stipulation there isn't a great deal more to show, but in the event you have something more you want to show, all right."

of law because an indictment was returned against him without first granting him a preliminary examination as required by Rule 5 of the F.R.Cr.P.[6] is without merit. This court has repeatedly held that there is no denial of due process where a person is indicted by the Grand Jury without having a preliminary examination. There is no constitutional requirement for such an examination. United States v. Smith, 343 F.2d 847, cert. den. 382 U.S. 824, 86 S.Ct. 55, 15 L.Ed.2d 69; Dillard v. Bomar, 342 F.2d 789, cert. den. 382 U.S. 883, 86 S.Ct. 176, 15 L.Ed.2d 123; United States v. Shields, 291 F.2d 798, cert. den. 368 U.S. 933, 82 S.Ct. 371, 7 L.Ed.2d 196, rehearing den. 368 U.S. 962, 82 S.Ct. 401, 7 L.Ed.2d 393; Boone v. United States, 280 F.2d 911 (C.A.6). See also, United States ex rel. Kassin v. Mulligan, 295 U.S. 396, 55 S.Ct. 781, 79 L.Ed. 1501; Goldsby v. United States, 160 U.S. 70, 16 S.Ct. 216, 40 L.Ed. 343.

Defendant Luxenberg assigns as error the failure of the trial judge to grant his motion for a directed verdict at the close of the government's case and defendant Zimmerman assigns as error the failure of the trial judge to grant his motion for acquittal at the close of all the evidence. Zimmerman also claims that the trial judge erred in entering findings of guilty on the "aiding and abetting" and conspiracy counts of the indictment. These assignments of error all relate to the sufficiency of the evidence. In reviewing the findings and conclusions of a trial judge, in his role of finder of facts, an appellate court cannot enter into a de novo consideration of the evidence. The findings of the lower court will not be reversed if there is substantial and competent evidence to support them. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, rehearing den. 315 U.S. 827, 62 S.Ct. 629, 86 L.Ed. 1222; United States v. Knight, 336 U.S. 505, 69 S.Ct. 704, 93 L.Ed. 845; United States v. Decker, 304 F.2d 702 (C.A.6). The question before us is whether there is substantial and competent evidence to support the trial judge's conclusion. In considering the sufficiency of the evidence, we do not determine whether it establishes guilt beyond a reasonable doubt but only that the evidence would permit the trier of facts to find the defendants guilty beyond a reasonable doubt. Ramsey v. United States, 248 F.2d 740 (C.A.6); United States v. Ragland, 306 F.2d 732 (C.A.4), cert. den. 371 U.S. 949, 83 S.Ct. 504, 9 L.Ed. 2d 498.

In considering motions for directed verdicts and motions for acquittal, an appellate court must construe the evidence most favorably to the government. Glasser v. United States, supra; United States v. Conti, 339 F.2d 10 (C. A.6). This includes the drawing of all reasonable inferences favorable to the government. United States v. Decker, supra; Battjes v. United States, 172 F. 2d 1 (C.A.6). The fact that the evidence would support alternative inferences is not significant. On appeal, this Court is limited to determining whether the trial court was justified in making the inferences it did. United States v. Conti, supra. Neither does a reviewing court pass upon the credibility of witnesses nor the weight of the evidence. Glasser v. United States, supra; United States v.

6. "(a) Appearance before the Commissioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. * * *

"(b) Statement by the Commissioner. The commissioner shall inform the defendant of the complaint against him of his right to retain counsel and of his right to have a preliminary examination. He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him. The commissioner shall allow the defendant reasonable time and opportunity to consult counsel and shall admit the defendant to bail as provided in these rules."

Carter, 311 F.2d 934 (C.A.6), cert. den., 373 U.S. 915, 83 S.Ct. 1301, 10 L.Ed.2d 415, rehearing den. 373 U.S. 954, 83 S.Ct. 1677, 10 L.Ed.2d 708.

■■■ The findings and conclusions of the trial judge are based largely upon circumstantial evidence. This Court has repeatedly held that circumstantial evidence may be sufficient to sustain a verdict of guilty, and such circumstantial evidence need not be of such a character as to remove every reasonable conclusion except that of guilt. United States v. Conti, supra; United States v. Young, 291 F.2d 389 (C.A.6); United States v. Comer, 288 F.2d 174, cert. den., 366 U.S. 925, 81 S.Ct. 1351, 6 L.Ed.2d 384. See also, Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150, rehearing den., 348 U.S. 932, 75 S.Ct. 334, 99 L.Ed. 731.

■■■ Defendant Zimmerman argues that in order to be found guilty of aiding and abetting and of participating in a conspiracy there must be proof of specific intent to commit the substantive crime. In support of this proposition the appellant cites a number of tax evasion cases and attempts to draw an analogy therefrom. However, a review of the cases under 18 U.S.C. § 657 and 18 U.S.C. § 656 [7], an almost identical section dealing with an almost identical offense, indicates that such reliance is misplaced. All that is required under these sections is the "intent to injure or defraud." United States v. Hickey, 360 F.2d 127 (C.A.7); United States v. Weaver, 360 F.2d 903 (C.A.7), cert. den. 385 U.S. 825, 87 S.Ct. 57, 17 L.Ed.2d 61; Logsdon v. United States, 253 F.2d

12 (C.A.6); Golden v. United States, 318 F.2d 357 (C.A.1); Seals v. United States, 221 F.2d 243 (C.A.8). Where a criminal intent is one of the elements of an offense, its existence is a question of fact to be determined by the trier of facts. Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288. The intent to injure or defraud may be proven by circumstantial evidence, which is often the only evidence available. Logsdon v. United States, supra. The trier of facts is permitted to consider all the surrounding circumstances in making this determination. Morissette v. United States, supra. A reckless disregard of the interests of Cosmopolitan is sufficient evidence to warrant a finding of an intent to injure or defraud. Logsdon v. United States, supra.

■■■ Another element necessary to sustain an aiding and abetting conviction is proof that the defendant " 'in some sort associated himself with the venture, that he participate in it as in something that he wishes to bring about, that he (sought) by his action to make it succeed.' " Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919.

■■■ Appellant Zimmerman further argues that his conviction on the conspiracy count cannot be upheld because there was no proof of his knowledge of the criminal plan in which he is said to have participated and no proof of his agreement to participate in any such scheme. Knowledge, like intent, is a factual issue which may be proved by circumstantial evidence. Whether a conspiracy exists is likewise a factual ques-

7. "Whoever, being an officer, director, agent or employee of or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both."

tion to be determined by the judge as trier of facts in a trial without a jury. It is not fatal to the prosecution's case that it does not prove that the defendants knew or participated in every phase of the unlawful scheme. Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154, rehearing den. 332 U.S. 856, 68 S.Ct. 385, 92 L.Ed. 425; United States v. Dardi, 330 F.2d 316 (C.A.2), cert. den. 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50, Gravis v. United States, 379 U.S. 869, 85 S.Ct. 117, 13 L.Ed.2d 73, Berman v. Fay, 381 U.S. 955, 85 S.Ct. 1808, 14 L.Ed.2d 727, rehearing den., Rosenthal v. United States, 379 U.S. 986, 85 S.Ct. 640, 13 L.Ed.2d 579. It is only necessary that a defendant know of the conspiracy, associate himself with it, and knowingly contribute his efforts in its furtherance. United States v. Hickey, supra; United States v. Dardi, supra. Participation in a conspiracy need not be proved by direct evidence. "(A) common purpose and plan may be inferred from a 'development and collocation of circumstances.'" Glasser v. United States, supra, at p. 80, 62 S.Ct. p. 469; Poliafico v. United States, 237 F.2d 97 (C.A.6), cert. den. 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597, rehearing den. 353 U.S. 931, 77 S.Ct. 718, 1 L.Ed.2d 725. It is not necessary that there be a formal agreement in order to have an unlawful conspiracy. American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575. "Almost always, the crime is a matter of inference, deduced from the acts of the persons accused, which are done in pursuance of an apparent criminal purpose." American Tobacco Co. v. United States, 147 F.2d 93, 107, (C.A.6), affirmed 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575. See also Poliafico v. United States, supra.

The evidence shows that Zimmerman drew up the necessary papers to incorporate Cosmopolitan, and did not, when applying to the Administration for the loan of $150,000, include the name of Mervin Gold as an organizer and as a person authorized to approve loans on behalf of Cosmopolitan. The evidence further shows that Zimmerman knew that Gold was the organizing force behind the corporation. Zimmerman was responsible for drawing up the loan papers and for making the escrow arrangements. Zimmerman permitted Gold to effectuate the loan, knowing that the corporate minutes approving the loan, which he had drawn, were not executed according to law. Zimmerman knew that the loan was made without adequate security for the protection of his client, Cosmopolitan.

Luxenberg executed the notes evidencing the loan from Cosmopolitan to Feature Products of Indianapolis. At the time such notes were executed Luxenberg knew that the Indianapolis business was closing its doors. To repay the loan, Luxenberg caused three checks to be issued to the order of Mervin Gold, personally, and two of these checks were delivered to Gold and deposited in his personal bank account. The third check, in the sum of $2,000, was retained by Luxenberg.

These and the other facts of the case conflict with the defendants' claims that they were innocent of any complicity in a scheme to defraud Cosmopolitan. Cosmopolitan was in fact defrauded and the judge was justified in inferring that the defendants knew of the scheme and that they willingly participated in it with the intent to injure and defraud Cosmopolitan. We agree with the judge's conclusions that the defendants were guilty as charged of aiding and abetting Mervin Gold in and conspiring to defraud Cosmopolitan in violation of Section 657, Title 18, U.S.C. There is substantial evidence to support each and every finding of fact made by the trial judge.

While this appeal was pending in this Court, defendants moved for a new trial on the basis of newly discovered evidence. This Court requested the trial court to certify whether it would grant or deny such motions in the event

the case was remanded for a ruling on the matter. At a hearing held on the motions, the newly discovered evidence was found to be affidavits of two attorneys and the testimony of a third to the effect that Mervin Gold stated to them that he had duped Zimmerman and Luxenberg, and exculpating them from any guilt in the matters which were the subject of the indictments. The trial judge denied these motions, and Zimmerman assigns such denial as reversible error. The trial judge found that the "newly discovered" evidence was not of such a nature that it would probably result in an acquittal on a retrial. The granting or denial of a motion for a new trial on the ground of newly discovered evidence rests primarily within the discretion of the trial judge. And his denial thereof will not be disturbed unless there is a clear abuse of such discretion. United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562, rehearing den. 327 U.S. 817, 66 S.Ct. 699, 90 L.Ed. 1040; United States v. Lewis, 338 F.2d 137 (C.A.6), cert. den. 380 U.S. 978, 85 S.Ct. 1342, 14 L.Ed.2d 272; Ashe v. United States, 288 F.2d 725 (C.A. 6). In order for a trial judge to grant such a motion, the newly discovered evidence must be of such a nature that it will probably result in acquittal on a retrial. A trial judge's finding that the newly discovered evidence is not of this nature will not be disturbed unless a clear abuse of discretion is shown. Winer v. United States, 228 F.2d 944 (C.A.6), cert. den. 351 U.S. 906, 76 S.Ct. 695, 100 L.Ed. 1442; United States v. Crowder, 351 F.2d 101 (C.A.6). The trial judge found that in view of all the evidence presented at the trial he could give little credence to the alleged statements attributed to Gold to the effect that Zimmerman and Luxenberg were dupes. We cannot say that the trial judge abused his discretion in denying the motion, and therefore find no error in this respect.

The judgments of the District Court are affirmed.