UNITED STATES of America, Plaintiff,

v.

John Robert EMLER, Defendant.

Crim. No. 5–81223.

United States District Court,
E. D. Michigan, S. D.

Nov. 24, 1976.

Gordon S. Gold, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Gershwin A. Drain, Detroit, Mich., for defendant.

## MEMORANDUM AND ORDER

DeMASCIO, District Judge.

The defendant in this criminal case was charged with violating 18 U.S.C. § 2314 by an indictment which reads:

On or about August 12, 1974, JOHN ROBERT EMLER, defendant herein, did transport and cause to be transported in interstate commerce from Detroit Michigan, in the Eastern District of Michigan, Southern Division, to Gary, Indiana, a falsely made and forged security, that is, a bank check, knowing the same to be falsely made and forged, a copy of said check being of the tenor and description following, to wit: One (1) Time DC check number 074–06711 dated August 12, 1974, in the amount of $1190.04 payable to Robert William Summers, endorsed by Robert William Summers and John Robert Emler; in violation of Title 18, Section 2314, United States Code.

Although the indictment substantially tracks the language of the statute, it fails to allege with specificity the statutorily prescribed intent.[1] The defendant contends in this post trial motion for arrest of judgment[2] that the indictment is insufficient because it fails to charge that the defendant transported or caused to be transported the check with "unlawful or fraudulent intent." The defendant argues that since the indictment fails to include the quoted statutory language, it fails to state an offense and that the grand jury never had an opportunity to determine whether there was probable cause to believe that the defendant acted with the requisite intent. Although the indictment could have been drafted with more precision, we have concluded that it is sufficient to charge a violation of 18 U.S.C. § 2314.

The issue now before us has been resolved in defendant's favor by the United States Courts of Appeals for both the Third and Fourth Circuits. The Sixth Circuit, however, has not addressed this issue. In *United States v. Pomponio,* 517 F.2d 460 (4th Cir.), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975), the court held insufficient an indictment which did not accurately and clearly allege all the elements comprising the offense. In so doing, the Fourth Circuit relied upon a similar holding in *United States v. Beard,* 414 F.2d 1014 (3d Cir. 1969). The Third Circuit decision was based on language contained in *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). In *Russell,* the defendant was charged with refusing to answer questions before a congressional committee. The indictment alleged, as required by statute, that the questions were pertinent to the subject under inquiry, but it failed to identify the subject of the inquiry or to state how the questions were relevant. In holding the indictment defective, the Supreme Court noted that the

rules governing the contents of indictments, variances and amendments are designed to protect certain important rights: the sixth amendment right to fair notice of the criminal charge a defendant is required to meet, the fifth amendment right not to be placed twice in jeopardy for the same offense, and the right guaranteed by the fifth amendment, and sometimes by statute,[3] not to be held to answer for certain crimes except upon a presentment or indictment returned by a grand jury. *See United States v. Pandilidis,* 524 F.2d 644, 648 (6th Cir. 1975), *cert. denied* 424 U.S. 933, 96 S.Ct. 1146, 47 L.Ed.2d 340 (1976). The Court found the indictment deficient in all respects except that it provided a basis for an evaluation of any future claim of former jeopardy. The Court noted that the cryptic indictment left the principal issue, whether the questions were relevant to the subject of inquiry, undefined. *Id.* at 766. Thus, the Court reasoned that the indictment permitted the government to assert one theory of the case before the grand jury, another during trial and still another theory in its arguments on appeal. *Id.* at 767. Similarly, the Court could not determine from the indictment whether the alleged facts could support a conviction. *Id.* at 769–70.

■ We are persuaded that *Russell* is clearly distinguishable on its facts and does not compel us to set aside Emler's conviction. The indictment Emler faced states an offense and the record clearly reflects the extent to which the defendant may base a subsequent plea of double jeopardy. The defendant cannot contend that he was not fully aware of the charge pending against him. The indictment clearly cites the statute that he allegedly violated. The statute specifically provides that to constitute an offense the falsely made or forged instrument must be transported in interstate commerce "with unlawful or fraudulent in-

---

1. In pertinent part, 18 U.S.C. § 2314 provides:

   Whoever, *with unlawful or fraudulent intent,* transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, al-

tered, or counterfeited . . . (emphasis added).

2. Rule 34, Fed.R.Crim.P.

3. In *Russell* the right to be charged by indictment was provided by statute.

tent." Thus, an indictment must contain language that plainly describes each element of the offense and fairly apprises the defendant of the charge he must meet. The test of the sufficiency of an indictment is whether it is fair to the defendant to require him to defend the charge as stated. 1 Wright, Federal Practice and Procedure 233–34 (1969); *see Glenn v. United States,* 303 F.2d 536, 538 (5th Cir. 1962); *Rudin v. United States,* 254 F.2d 45, 48 (6th Cir. 1958). It is inconceivable that Emler could possibly have been misled as to the offense with which he stood charged. *United States v. Debrow,* 346 U.S. 374, 378, 74 S.Ct. 113, 98 L.Ed. 92 (1953); *Rudin v. United States, supra,* 254 F.2d at 48.

■ The defendant's defense renders it apparent that he was aware of the essential elements the government was required to prove. Emler's defense was based on a purported agency relationship between himself and the payee so as to negate a possible jury finding that, at the time he caused the check to enter interstate commerce, he did so with the requisite unlawful or fraudulent intent. Thus, his sixth amendment right to fair notice of the criminal charge he was required to face was fully satisfied.

■ Where an indictment charges that the defendant transported a falsely made or forged security in interstate commerce *knowing* it to be falsely made or forged, the grand jury could not reasonably find other than probable cause to believe the defendant acted with the requisite intent. An "unlawful or fraudulent" intent is implicit in such an allegation. It was necessary for the government to establish before the grand jury the fact that the instrument was falsely made and forged. Thus, the testimony of the true payee was essential. The payee's testimony, together with the facts establishing the interstate transportation of the instrument, was sufficient to permit the grand jury to return the indictment. This evidence was more than ample for the grand jury to find probable cause to believe that the defendant acted with "unlawful and fraudulent intent." A defendant's intent is difficult to establish even at trial.

Intent can only be inferred from evidence of a defendant's actions. The same evidence presented to the grand jury persuaded the petit jury beyond a reasonable doubt that Emler acted with the requisite intent. Hence, the court was sufficiently informed by the indictment to determine whether the facts alleged could support a conviction and to discover what was in the minds of the grand jury when they returned this indictment.

■ Finally, the defendant argues that the failure to include the phrase "with unlawful or fraudulent intent" in the indictment denied him the right to have the grand jury ultimately determine whether he possessed the requisite intent. The defendant adopts this argument from *Beard.* In *Beard,* the Third Circuit relied upon the following language in *Russell*:

> To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of *facts not found by, and perhaps not even presented to,* the grand jury which indicted him. 369 U.S. at 770, 82 S.Ct. at 1050 (emphasis added).

Thus, the court reasoned that, because the indictment failed to charge the requisite intent, there was no way of knowing whether the grand jury found probable cause to believe the defendant acted with such intent. *Beard, supra* at 1016–17. *Cf. United States v. Goldstein,* 502 F.2d 526, 529 (3d Cir. 1974). We find this reasoning unpersuasive. We are reluctant to adopt a *per se* rule requiring dismissals of indictments or setting aside convictions obtained after a fair trial simply because an indictment fails to mimic with complete precision the language of a statute. *United States v. Russell* does not compel such a result. The purpose behind the constitutional requirement of an indictment by a grand jury is to curb an over-zealous prosecutor from bring-

ing vexatious and frivolous charges. The defendant should not be left at the mercy of the prosecutor or the court. *United States v. Russell, supra,* 369 U.S. at 771, 82 S.Ct. 1038. This constitutional requirement is not abridged, however, where the defendant is tried upon evidence that fairly embraces the facts presented to the grand jury and upon which the grand jury based its charge. *United States v. Silverman,* 430 F.2d 106, 111 (2d Cir. 1970), *cert. denied,* 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971). Thus, an indictment should be read to include facts that are necessarily implied in the specific allegations made. *Id.* at 111. *Cf. Chereton v. United States,* 286 F.2d 409, 412–13 (6th Cir.), *cert. denied,* 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 584 (1961). This is consistent with *Russell* for the Court repeatedly emphasized the vagueness of the indictment regarding the subject of inquiry. This vagueness made it possible for the defendant to be aware of all the evidence that the prosecutor would present and still be unaware of the government's theory and the relevancy of the evidence. It was thus very likely that the prosecutor would be able to argue one theory to the grand jury, a second at trial, and still a third on appeal. *See* Note, *The Supreme Court 1961 Term,* 76 Harv.L.Rev. 54, 102–03 (1962).

▮▮ Emler was not faced with that type of danger. The indictment sets forth with specificity the date of the transaction, the drawer and amount of the check, the check number and the payee. The indictment charges that the defendant acted knowing

that the check was forged or falsely made. Additionally, the evidence necessary to establish that the check traveled in interstate commerce would disclose that the defendant deposited the falsely made and forged check into his account and then withdrew and retained the funds. These facts gave the grand jury probable cause to believe that the defendant acted with unlawful or fraudulent intent. We have indicated that intent is not always susceptible of direct proof. Where the defendant does not admit the intent with which he acts, the government must rely upon circumstantial evidence from which the requisite intent may be inferred. Just as the petit jury inferred Emler's wrongful intent from all the evidence presented, so did the grand jury. At trial, the defendant testified that he was acting as an agent of the payee and, therefore, lacked the requisite intent. At the conclusion of the evidence, the court charged the jury that, if it found the defendant was acting as an agent at the time he deposited the check into his own account, the jury should acquit the defendant for lack of the necessary unlawful or fraudulent intent.[4] Thus, we cannot say that the defendant was tried upon a theory or evidence not embraced in the facts upon which the grand jury based its charge.[5]

There is support in other circuits for the result we reach. In *United States v. Silverman, supra,* the Second Circuit held that an indictment which charged that the defendant embezzled funds from a labor organization was sufficient even though it did not

---

4. It is true that in *Beard* the district judge included in his charge an instruction that the jury must find that Beard acted "with unlawful or fraudulent intent." Nevertheless, the Third Circuit held that the grand jury, by returning the indictment as worded, did not make a finding of probable cause to believe that the essential element of unlawful or fraudulent intent was present. We adhere to our view that just as the petit jury was required to infer such intent, it was equally necessary for the grand jury to infer the same intent upon the same evidence.

5. It is interesting that in *Beard* the court noted that its decision holding the indictment defective would leave the government free to reindict Beard because, under *United States v. Ball,*

163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), reindictment would not involve double jeopardy considerations. More recent decisions have held that jeopardy attaches when a jury has been impaneled and sworn. *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). While *Ball* has never been overruled by the Supreme Court, it has been severely criticized and must, it seems to us, be re-examined. *See, e. g.,* 1 Antieau, Modern Constitutional Law 306 (1969) (finding it remarkable that a person can serve time in a penitentiary without ever having been placed in jeopardy). Thus, we do not find it persuasive that the government would be free to reindict the defendant.

state that the union was engaged in interstate commerce. The court found that the use of the term "labor organization" necessarily implied that the organization was engaged in an industry affecting interstate commerce. Similarly, the District of Columbia Circuit held that an indictment for robbery was not rendered insufficient by its failure to allege that the defendant acted with the necessary specific intent. *Austin v. United States,* 134 U.S.App.D.C. 259, 414 F.2d 1155 (1969).[6]

Accordingly, IT IS ORDERED that defendant's motion for arrest of judgment be and the same hereby is denied.

---

6. *See Illinois v. Somerville,* 410 U.S. 458, 477, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), where Justice Marshall, in dissent, notes that the indictment under consideration was sufficiently detailed to meet federal requirements that an indictment contain the elements of the offense to be charged and sufficiently apprise the defendant of the charges that he must be prepared to meet. *Id.* at 479, 93 S.Ct. 1066.